City of Chester to use of Michael Ross *v.* Martha S. Eyre, Sallie P. Eyre, and Estate of J. P. Eyre, Jr., Owners or Reputed Owners, Appellants.

*Road law — Municipalities— Ordinances — Declarations of members of council—Evidence.*

An ordinance of councils is the proper legal expression of a city's authority in reference to all matters of grading, paving .and curbing the streets, and such ordinance cannot be abrogated by the declarations of the members of any of the committees of council.

*Municipalities—Ratification of contract.*

A city which has authority to authorize a contract for curbing, but does

not expressly do so, may, after the work has been performed by the contractor, validate the action.

*Municipal lien—Curbing—Division of lots—Description.*

A municipal lien for curbing, filed against several contiguous lots as one tract of land, will be sustained where the lots are all owned by one person, with no division lines between them, and are used together as the curtilage of a mansion house which stood in about the center of the tract.

Argued Feb. 10, 1897.   Appeal, No. 600, Jan. T., 1896, by defendants, from judgment of C. P. Delaware Co., June T., 1893, No. 87, overruling exceptions to referee's report.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Exceptions to referee's report.

The case was referred to W. R. Bliss, Esq., as referee, who reported the facts to be as follows:

On September 22, 1891, the city of Chester adopted the following ordinance :

" Ordinance for the grading, curbing and paving of both sides of Eighth street, from Barclay street to Concord avenue.

"Section 1. The select and common council of the city of Chester do ordain, That the land owners on both sides of Eighth street, from Barclay street to Concord avenue, be and they are hereby directed to grade, curb and pave the sidewalks in front of their respective properties within thirty days after the first publication of this ordinance, in accordance with the lines and grades upon the official plan of the said city to be given by the city engineer, and upon failure of said land owners to have said work done within the time specified, the commissioner of highways is authorized and instructed to have the same done and collect the costs thereof by lien or suit as provided by law and ordinance.

" Section 2. The said paving shall be the full width of the sidewalk and the material used shall be the best quality of paving bricks, and the curb stones shall be such as are required by the fifth section of the ordinance of February 10, 1891," etc.

This ordinance was advertised in the newspapers designated for the advertising of ordinances during the year 1891, for the time required by law.   William P. Thomson, who was the com-

missioner of highways at that time, gave to Mrs. Eyre, one of the defendants, who was the proper person to receive such notice, a partly printed and partly written notice which was in the following form:

"CHESTER, PA., November 16th, 1891.

"Sir: You are hereby notified and required to grade, curb and pave the sidewalk in front of your lands on Eighth street on both sides from Barclay street to Concord avenue in compliance with the ordinance of councils, approved 22d day of September, 1891, within ten days of the receipt of this notice, or otherwise the work will be done by this department and the costs thereof collected from you by lien or suit as provided by law.

(Signed)  "WILLIAM P. THOMSON.
"To MRS. J. P. EYRE."

This was the usual form of notice to property owners and was served more than thirty days after the first publication of the ordinance. The defendants did not comply with the requirements of the ordinance or of this notice and, on April 16, 1892, Mr. Thomson directed Michael Ross, the use plaintiff, to do the work, giving him the following written note:

"OFFICE OF WM. P. THOMPSON, COMM'R OF HIGHWAYS, }
    "CITY HALL, CHESTER, PA., April 16, 1892.        }

"Mr. Michael Ross: You are hereby notified and required to grade, curb and pave the sidewalk in front of the lands of Mrs. J. P. Eyre on both sides of Eighth street from Barclay to Concord avenue, in compliance with an ordinance of councils approved the 22d day of September, 1891.

(Signed)  "WILLIAM P. THOMSON.
            "Commissioner of Highways."

Mr. Ross held a contract with the city for the year 1892, to do all the work of this character that might be required, at prices which were fixed by competitive bidding. Some time in the autumn of 1892 Mr. Ross, acting under the authority of the above letter from Mr. Thomson, set the curb stones, and graded and paved the sidewalk on the south side of Eighth street between Barclay street and Concord avenue, which is the

work for which the lien now in suit was filed.   There is no dispute as to the character of the work done, the kind or quality of materials used, or the prices charged.   Before beginning the work  Mr. Ross had the city engineer set the curb lines for him, and in the books in the engineer's office the charge for that service is entered under date of October 1, 1892.   After the completion of the work Mr. Ross measured it and handed a statement of it to J. Howard Cochran, a real estate agent of Chester, who kept his books for him.   This statement with the prices charged, is entered in the books under date of October 20, 1892, and from it a bill was made out, dated October 21, 1892, and sent to Mrs. Eyre.   The amount claimed in that bill was $869.81.   The bill was not paid, and for the purpose of preparing a lien the city engineer was called upon to make an official measurement of the work, which he did, and from which he made out and gave to Mr. Ross the following bill against Mrs. Eyre :

"CHESTER, Pa., Dec. 15, 1892.

"Mrs. J. P. EYRE,

"To MICHAEL ROSS, Contractor, Dr.

On the south side of Eighth street, between Fulton and Barclay streets, viz :

| | |
|---|---|
| Curbing,  474 feet, at .73, . . . . | $346.02. |
| Re-curbing, | |
| Paving,  604.39 sq. yds., at .75, . . . | 453.29. |
| Re-paving, | |
| Grading,  256.94 cubic yds., at .16, . . . | 41.11. |
| Surveyor's Charges, . . . . . | 10.88. |
| | $851.30. |

"Measured by E. H. ROBERTS, City Surveyor."

At the bottom of the printed form on which this bill was rendered were blanks for the approval of the bill by the commissioner of highways and the street committee of councils.   These blanks were not signed.   The defendants refused to pay this bill, whereupon the city solicitor prepared the lien upon which this action is founded, and filed it on April 4, 1893, in the following form:

" City of Chester to use of Michael ⎱
        Ross, Contractor,                    ⎰
                vs.                          ⎱  Municipal Lien.
" Martha S. Eyre, Sallie P. Eyre,    ⎰
    and Estate of J. P. Eyre, Jr.,
    owners or reputed owners.

" The city of Chester files this claim, to the use of Michael Ross, contractor, against all that certain lot or piece of ground, with the buildings and improvements thereon erected, situate on the south side of Eighth street, in the city of Chester, aforesaid, and bounded on the north by the said Eighth street, on the south by Seventh street, on the east by Barclay street, and on the west by Fulton street, and against Martha S. Eyre, Sallie P. Eyre and estate of J. P. Eyre, Jr., owners or reputed owners thereof, for the sum of eight hundred and ninety-three dollars and eighty-six cents, being the cost of work done and materials furnished, together with a five per cent. penalty, for and about the paving and curbing of the sidewalks on Eighth street, in front of said lot of ground as follows :

| | | |
|---|---|---:|
| Curbing,  474 feet, at .73, | . . . . | $346.02. |
| Paving,   604.39 sq. yds., at .75, | . . . | 453.29. |
| Grading,  256.94 cu. yds., at .16, | . . . | 41.11. |
| Surveyor's Charges, | . . . . . | 10.88. |
| Penalty of five per. cent. | . . . . | 42.56. |
| | | $893.86. |

" The work was done and materials furnished in pursuance of law and the ordinances of the said city, the said owners or reputed owners having neglected or refused to do the same after due and legal notice and was completed within six months last past and duly assessed against said owners or reputed owners and said lot of ground.

" Witness the hand of the city solicitor of the city of Chester aforesaid.

(Signed)        " ORLANDO HARVEY.
                        " City Solicitor."

Prior to September 22, 1891, the Chester city councils passed two ordinances upon the subject of sidewalks, which are still in

force. The first of these, approved January 6, 1890, and published on page 415 of the printed ordinance book, is as follows:

" Ordinance providing for the collection of the costs of paving or repairing sidewalks from the property owners:

" Section 1. That from and after the passage of this ordinance it shall be the duty of any and all contractors who shall have hereafter paved or repaired any sidewalks in said city, under the instructions or directions of the proper committee of said council, to collect the cost of said work from the owner or owners of real estate abutting upon said sidewalk. And in case of the neglect or refusal of such owner or owners to pay for said work, then the said contractor or contractors shall be entitled to file a lien therefor and to prosecute the same in the name of the city to the use of said contractor or contractors, in the same manner as liens for such work are now by law recoverable by the said city."

The other of these ordinances was approved February 10, 1891, and is printed in the ordinance book at page 456. Sections 2 and 3, are as follows:

" Ordinance regulating the width of sidewalks, the curbing, paving, repaving and repairing thereof, and prescribing penalties for violations of its provisions:

" Sec. 2. That whenever the councils of the said city shall, by resolution or ordinance, direct the sidewalks or footways of any such street, lane or alley to be curbed or paved or repaved, it shall be the duty of the owner or owners of the lands abutting thereon and they are hereby required to cause said sidewalks or footways to be curbed and paved or repaved, the full width thereof, with such material and in the manner in said resolution or ordinance set out; and if any such owner or owners shall neglect or refuse to curb and pave or repave the said sidewalks or footways within thirty days after the publication first made of the resolution or ordinance requiring the same to be done, it shall be the duty of the commissioner of highways to cause the same to be done, and the cost and expense therefor shall be collected from said owner or owners by lien or suit, according to law.

" Sec. 3. That whenever any of the sidewalks or footways of the said city, or any part thereof, shall become out of repair, and need recurbing or resetting of curb or repaving, the com-

missioner of highways, by authority of the sidewalk committee, shall notify the owner or owners of real estate in front of whose respective properties said repairs are needed, to make said repairs forthwith, and if said owner or owners shall neglect or refuse to make said repairs within ten days after receiving such notice, it shall be the duty of the commissioner of highways to cause said work to be done, and the cost and expense thereof shall be collected from said owner or owners by lien or suit, according to law. Provided, That said ten days' notice shall be adjudged sufficient if left upon the premises with an adult, or in case of unimproved lands, if posted on the premises, or left with the agent or attorney of the owner or owners."

During the several hearings before the referee the attorney for the defendants offered to prove that while the ordinance of September 22, 1891, was pending in council, he tried to have it amended so as to exclude from its provisions the premises covered by the lien above set forth; and that failing in that, after the ordinance had passed, he entered into negotiations with the council's committee on sidewalks, the result of which was an assurance given to him by the chairman of that committee and some of the members that the work in question should not be required until after notice should be given to him by the committee; that no such notice was given by the committee either to him or to the defendants, and that it had been the custom in Chester for work of this kind to be done only after the sidewalk committee had notified the commissioner of highways to proceed. This testimony the referee excluded as irrelevant, for reasons which will be set forth hereafter. The exclusion of this testimony left but one question of fact to be decided, viz: Whether the lien was filed within six months after the completion of the work. While the testimony upon this point is somewhat conflicting and reveals an inexcusable carelessness on the part of the city in preserving the evidence in support of such claims, the referee is of opinion that the facts shown are sufficient to sustain the lien.

It appears that at the same time that this work was under way, Mr. Ross was doing a great deal of other sidewalk work in the same section of the city, part of it on this same street, and all of it within a few squares of the work. He testified that he could not give the exact date when any of this work

was done, but that the work over which this suit arises was the last that he did. All the brick used in these several jobs was bought from Daniel Robinson, a brick maker, whose books show entries of charges against Mr. Ross for a large quantity of brick delivered in various places in that section of the city, the first of which under date of August 2d and the last October 20, 1892. The entries of brick for delivery at Eighth and Fulton streets begin on September 27 and end on October 20. These are the only charges for brick delivered at the spot where this work was done; but paving was done at the same time on Fulton street, between Seventh and Eighth streets, and there are a large number of charges before October 1 for brick delivered at Seventh and Fulton. The curbstones used in this job were bought from George W. Lewis, whose books show that the last charge for curbstones was made on October 1. He testified that these stones were actually used in the work, as he saw them in place after the job was finished and could easily recognize them. None of the witnesses could say from memory whether the brick or stones were actually delivered to the places entered in the books, but said that the place of delivery was entered according to the instructions given by Mr. Ross when he gave the order and that the actual delivery was made by the teamsters whom they employed. Mr. Ross says that he was from three to five weeks doing this job, including one week when he had the men off upon another piece of work; that he did not begin the work until after the curb stakes had been set by the city engineer, E. H. Roberts, and that his practice was to measure such work as this as soon as it was completed and give the statement to Mr. J. H. Cochran so that it could be entered at once in his books and a bill be made out. The books in the city engineer's office show that the fee for driving the stakes was charged up on October 1, and the entry in Mr. Ross's books of the measurement made by him of the completed work is under date of October 20. Mr. Roberts, the city engineer, has no recollection of the date of driving the stakes, but says that the rule was to make such entries immediately after the work was done and usually on the same day. There is no reason to question Mr. Ross's statement that this job was the last piece of work of the kind that he did in that section of the city in the autumn of 1892. If that be true, then the facts that the curb

stakes were set on or before October 1, that the brick charged as delivered at Eighth and Fulton streets is entered under dates beginning with September 27 and ending October 20, that the last charge for curbstones is under date of October 1, and that the charge for the completed work was entered in Mr. Ross's books on October 20, appear to the referee to be sufficient—until controverted by equally strong testimony—to establish the fact that the date of completion of the work was within six months prior to April 4, 1893, the date of filing the lien.

To controvert this testimony the defendants have produced Mrs. Eyre (now Mrs. Knowles) who says that in 1892, as now, she was living in Philadelphia; that she was in Europe while this work was being done; that she returned to Philadelphia on October 5, 1892, and on that day met her nephew, Edmund Pennell, with whom she had some conversation with reference to this work; that as the result of that conversation she came to Chester on October 8 and visited the premises, and that she found the work then finished, the pavement sanded and all the débris removed. She says she was in Chester twice during that month, but is certain that it was on the first visit that she made this examination. Edmund Pennell corroborates her testimony as to the date of his conversation with her and says that the information he gave her was communicated to him by his father, Charles D. Pennell. The latter says that he kept an eye on the work that was being done in front of his sister's property during her absence in Europe, and that the work now in dispute was finished before her return.

It is singular that this defense was not set up at an earlier stage of this case, which has now been under way for several years, but the facts may not have been known to the counsel for the defendants and they are entitled to the full benefit of the evidence.

It is clear that if this work was in fact the last work done in that section of the city, it was not finished before October 4, because after that date there was almost daily deliveries of brick at Eighth and Fulton streets, up to the 20th, amounting to a total of 39,500 brick. If the direct testimony of Mr. Ross upon this point be set off against the direct testimony of Mrs. Eyre to the effect that she remembers seeing the completed work on October 8, the purely circumstantial evidence seems

to the referee to give the weight of credibility very decidedly to the plaintiffs' contention that the work was not completed before October 4. At the most, the direct testimony offered by the defendants goes back only to October 8.

The defendants attack this municipal lien for the following reasons : (1) Because it does not set out on the face the time when the work in question was completed, merely alleging that it was done within six months last past. (2) Because it was filed against an entire square of ground, each of the sides of which is liable to a similar lien for work that may be done in front of it. (3) Because the work was not done in the manner expressly provided by the ordinances of the city which are above set forth. (4) Because the lien includes a penalty in addition to the contract price of the work as fixed by the competitive bidding for the year 1891.

The referee overruled the objections to the lien and reported in favor of the plaintiff for $1,025.81. Exceptions to the referee's report were dismissed by the court and judgment entered for the plaintiff.

*Errors assigned* were in dismissing exceptions to referee's report and entering judgment for plaintiff.

*O. B. Dickinson*, for appellants.—When the right of the contractor to collect depends not upon the contract or consent of the property owner, but is a right conferred by law, all the forms of law must be complied with to establish the right: Reilly v. Phila., 60 Pa. 467 ; Fell v. Phila., 81 Pa. 58; Phila. v. Jewell, 135 Pa. 330.

At the trial the plaintiff must produce evidence in support of the averments of the lien. Although it is not necessary to set out in the lien when and how and by what authority the assessment was made it is necessary to prove these facts at the trial: Phila. v. Richards, 124 Pa. 303; Phila. v. Stevenson, 132 Pa. 103; Mt. Pleasant v. R. R., 138 Pa. 365; Scranton v. Arnt, 148 Pa. 211.

*George M. Booth*, with him *A. A. Cochran*, for appellee.— The defendants cannot inquire into the validity of a contract between the legal and equitable plaintiffs: Brientnall v. Phila., 103 Pa. 156.

The liability of the defendants is not affected whether the city did the work, or whether it was done by the contractor: Schenley v. Com., 36 Pa. 29.

. The scire facias shows conclusively that all the acts required to be done by the city or its agents under the terms of the resolution had been complied with and ratified: City v. Burgin, 50 Pa. 541.

Even if the highway commissioner had authorized the work without special authority from the sidewalk committee, the city could waive the irregularity, a matter with which the defendants had nothing to do: City v. Hays, 93 Pa. 72.

The city having ratified the act of the contractor by approving the work and bringing the suit upon the lien, the defendants are liable for the payment of the same: Shiloh Street, 165 Pa. 386.

No marks of division being shown upon the premises, the city solicitor could adopt no other course than to file the lien against all the premises: City v. Cadwallader, 22 W. N. C. 8.

OPINION BY MR. JUSTICE GREEN, July 15, 1897:

When this case was here before, 167 Pa. 308, it was only upon the sufficiency of an affidavit of defense in which it was alleged that the work was not done by the city nor in pursuance of its authority, but by the plaintiff Ross " on his own motion and without the authority of the city to do so." The sufficiency of that defense alone, was considered and, on that one point only, the judgment was reversed and the case sent back to be heard on its merits. On the hearing before the referee a large amount of testimony was taken on this very subject, and it was simply overwhelming in proof of the fact that the work was done by the authority of the city, and that Michael Ross, the plaintiff, was not only authorized, but positively ordered, to do the work in question by the proper officer, the commissioner of highways. Moreover, an ordinance for the curbing and paving in question had been passed by the city councils on September 22, 1891, and on November 16, 1891 notice partly printed and partly written was given to Mrs. J. P. Eyre, one of the defendants, requiring her to do the work in pursuance of the ordinance, within ten days from receipt of the notice, or otherwise the work would be done by the highway department. The referee has

found all these facts, and the defendants entirely failed to establish the facts set out in their affidavit of defense, and the former decision has no application in the present consideration of the cause. All of that branch of the argument for the appellants will therefore be dismissed without further notice.

The offers of testimony which were rejected by the referee are in no better condition. The official action of the city by its proper officers certainly could not be abrogated by the declarations of individual members of the sidewalk committee, and this kind of testimony was the basis upon which the offers in question were made. The ordinance of councils is the proper legal expression of the city's authority in reference to all matters of grading, paving and curbing on the streets, and the proposition is not to be tolerated for a moment that the declarations of the members of any of the committees can suffice to defeat and overthrow such ordinances. The matter is too plain for argument, and we are clearly of opinion that the rulings of the referee on this subject in disposing of the rejected offers of testimony were absolutely correct. Moreover all the work done by the plaintiff in this regard was fully accepted and ratified by the city councils after it was completed, and even had there been any real question as to want of prior authority to do the work, the decision of this court in Shiloh Street, 165 Pa. 386, would amply sustain the subsequent ratification and thereby validate the action of the plaintiff in the performance of the work. The record shows that the defendants had ample notice of the passage of the ordinance requiring the work to be done, and also notice in writing that the work must be done. Although the ordinance was passed in September, 1891, and the written notice to do the work was dated November 16, 1891, and duly served thereafter, nothing was done by the following spring, and thereupon the highway commissioner, on April 16, 1892, notified the plaintiff, who was city contractor, to proceed and do the work. A further delay of several months took place and still the work was undone, and it was not until October, 1892, that the plaintiff did the work, acting under the authority of the ordinance of September, 1891, and the written order of the highway commissioner.

It seems hardly necessary to refer to the legislation which clothes the highway commissioner with authority to act in the

premises, but as some question is made upon this subject in the argument for the appellants, reference is made to the ordinance of February 10, 1891, printed in the ordinance book at p. 456. The second section directs that whenever the city councils shall by resolution or ordinance direct the sidewalks or footways of any street or alley to be curbed or paved it shall be the duty of the owner, after notice by publication, to do this work, and if not done by the owner within thirty days after the publication of the notice, " it shall be the duty of the commissioner of highways to cause the same to be done, and the cost and expense therefor shall be collected from said owner or owners by lien or suit according to law." The third section contains a similar provision in case any of the sidewalks or footways become out of repair, and if after notice by the highway commissioner by authority of the sidewalk committee, the work is not done by the owner, then the highway commissioner is directed to cause the work to be done, and the cost and expense to be collected. As this section relates to cases of repairs, and as this case is one of new work, it is the second, and not the third section, that is applicable. But the ordinance of September 22, 1891, is specific, and is directed to this very work to be done on both sides of Eighth street from Barclay street to Concord avenue, which embraces these premises, and by that ordinance it is provided that in case of the failure of the owner to do the work within the time specified, " the commissioner of highways is authorized and instructed to have the same done and collect the costs thereof by lien or suit as provided by law and ordinance." It will be seen at once that the sidewalk committee has nothing to do with the matter under either of the ordinances applicable to the present case, and hence the acts or declarations of the members of that committee are not relevant.

As to the contention that the lien was improperly filed against the whole of the property of the defendant on Eighth street, it is only necessary to say that the property was a unit, embracing all within the boundary lines, and with no division lines across it in either direction. The referee found that the entire square of ground was used as the curtilage of the mansion, which stood very nearly in the center of the lot, and that there were no marks or division lines of any kind upon the ground by which the city solicitor could have made a division for the pur-

pose of the lien.   In these circumstances there is no force in the appellant's contention.   In a well considered case in the common pleas of Philadelphia county, City to use of Ryan v. Cadwallader et Ux., 22 W. N. C. 8, this question arose, and it was decided that the claim was well filed against one lot as a whole, although there were really four lots separately laid out on the registered plans in the survey office of the city.   In a careful opinion written by our Brother MITCHELL, who was then a member of that court, the lien was sustained.   The reasoning of the opinion is entirely satisfactory to us, and we hold, as was there held that there being no division lines marking the different lots, the claim of lien filed was not defective because it was filed against the whole.   In the present case there could be no means of distinguishing parts of the property which are liable for the cost of the work from other parts which are not so liable, and as the whole property was used as one, we think the lien was not defective in not defining interior lines.

There are some other matters of minor consequences appearing in appellant's argument, but we do not regard them as of any materiality, and without considering them in detail we are of opinion the judgment should be affirmed.

The assignments of error are all dismissed.

Judgment affirmed.