WALTER LANGLOIS

*v.*

JAMES A. CAMERON *et al.*

| 201 | 301 |
|-----|-----|
| 201 | ⁷343 |
| 201 | 301 |
| 210 | ⁷403 |

*Opinion filed February 18, 1903.*

1. SPECIAL TAXATION—*"contiguous" to improvement means "abutting" upon the same.* Under an ordinance authorizing the levy of a special tax upon land "contiguous" to the improvement, only such property as abuts upon the street to be improved can be taxed.

2. SAME—*special tax commissioners bound to take notice of recorded deeds showing division of lots.* Special tax commissioners are bound to know that certain lots originally platted as fronting upon the street to be improved have been divided into halves, where such division is shown by recorded deeds and possession and improvement of the property in accordance therewith.

3. SAME—*effect where lots originally abutting on street are divided.* If lots originally platted as fronting north upon the street to be improved by special tax upon contiguous property have been divided into north and south halves and sold, the south halves, if improved as one lot fronting upon a cross-street, cannot be specially taxed for the improvement as "contiguous" property.

4. SAME—*what not notice of special tax.* Notice "to the owners of abutting lots" of a special tax proceeding is not notice to owners of a tract of land fronting upon another street and not touching upon the street to be improved, even though such tract is composed of portions of lots originally platted as abutting upon the latter street.

5. SAME—*collector has no authority to apportion tax.* The county collector has no power to assess a special tax against lots not assessed by the commissioners, nor to apportion upon different parts of lots a special tax assessed against the lots as a whole.

6. TAX DEEDS—*when tax deed is invalid.* A tax deed for property sold for a special tax is void where no valid special tax could have been levied against the property, or where the sale is for a tax not in fact levied upon the property sold.

7. SAME—*when amount bid at tax sale need not be re-paid.* Neither the amount paid at a tax sale by the holder of the tax deed nor the amount paid by him upon a sidewalk assessment in order to protect his title need be re-paid by the owner of the property, as a condition to relief, where the sale was void because the property was in no way liable for the tax.

8. JUDICIAL SALES—*purchaser is bound to know that tax was valid.* A purchaser at a tax sale is bound to know, at his peril, that the

property owner is in fact delinquent in the payment of a valid tax assessed against the property.

9. COSTS—*when costs are properly adjudged against the defendant.* The costs of a proceeding to set aside a tax deed as a cloud are properly adjudged against the defendant, where he not only attempted to sustain an invalid title, but refused, when requested, to surrender his certificate of purchase before suit was brought.

10. JUDGMENTS AND DECREES—*order setting aside tax deed should not direct a re-conveyance.* A decree setting aside a tax deed as null and void should not order the defendant to convey the property to the complainants, but should perpetually enjoin him and his heirs and assigns from asserting title to the property.

11. DEEDS—*sufficiency of description of property conveyed.* The description in a deed of property as being in "Frye's addition" to a city is sufficient to identify property located in "Smith Frye's addition," where it appears there was no other "Frye's" addition.

12. SAME—*when certificate of magistracy is unnecessary.* Under the second clause of section 20 of the Conveyance statute, if a deed is acknowledged before a notary public in a foreign State a certificate of magistracy is unnecessary.

APPEAL from the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding.

GAGE & DEMING, for appellant.

WILLIAM S. KELLOGG, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Peoria county setting aside a deed held by appellant, upon the bill of appellees.

The facts disclosed by the bill, so far as they are important for the purposes of this decision, are as follows: Illinois avenue, in the city of Peoria, runs east and west. Knoxville avenue crosses it, running north and south, and some distance west thereof Buckner avenue also crosses it. Lot 3, block 7, in Smith Frye's addition to the city of Peoria, according to the plat of that addition, fronted fifty feet on Illinois avenue and extended south one hundred and fifty feet along the east line of Knoxville avenue. Immediately east of lot 3 lies lot 4, and

still east of that, lot 5, each originally fronting fifty feet on Illinois avenue and extending south one hundred and fifty feet, as did lot 3.   Twenty-five or thirty years ago these lots were divided, by conveyances, into the north half and the south half, each half fronting on Knoxville avenue seventy-five feet and extending east one hundred and fifty feet.   Complainants have owned the south half of these lots since January 2, 1886, and have occupied the same since that time as their homestead, and paid all taxes legally assessed thereon.   On February 2, 1892, the city council of the city of Peoria passed an ordinance for the improvement of said Illinois avenue between Knoxville and Buckner avenues, to be paid for by special tax to be "levied and assessed, severally, upon the real estate, lots, blocks and parcels of land contiguous to said improvement, according to the frontage of said several lots, blocks and parcels, in accordance with the provision of section 9," etc.   By proceedings had in pursuance of that ordinance, commissioners appointed to levy the tax made and returned an assessment roll showing an assessment on said three lots, giving the frontage of each as fifty feet on Illinois avenue but not stating how far south they extended, and fixing the amount of each of five several installments on each lot at $42.05.   That assessment was confirmed by the county court of said county.   The bill alleges that no part of the south half of said lots abuts or fronts on said Illinois avenue, or·did at the time of the passage of said ordinance and the levy of said assessment; that complainants were not notified of such tax or the apportionment or assessment of the same, nor of the term of court at which a final hearing thereon would be had; that no such notice was mailed to them and that no proof of mailing of such notice appears in said proceedings; that the names of complainants do not appear in said assessment roll ·as owners ·of any of the property assessed or taxed in said proceeding, nor were either of them made parties defendant to the said

proceeding; also, that on June 15, 1894, parts of said south half of lots 3, 4 and 5 were sold for said special tax, in pursuance of which the defendant, Walter Langlois, obtained a deed, which was placed on record February 19, 1897; that they had no notice of any of the proceedings, the tax sale or the making and delivery of said deed until after the expiration of the two years' allowed for redemption, and that upon obtaining knowledge thereof complainant James A. Cameron explained, by letter to the defendant, the facts and circumstances of the case and forbade his attempting to take out a deed, and demanded that he cancel and return said certificate of purchase to the complainants so as to remove the cloud upon their title, which he refused to do. The prayer is that the deed be set aside as a cloud upon the complainants' title.

The defendant answered, denying the allegation of ownership in the complainants; admitting the proceedings by the city of Peoria to levy said special tax; denying the allegations of the bill as to want of notice; alleging the validity of his tax deed, and averring that complainants ought not to have the relief prayed in their bill for want of an offer to do equity by paying the defendant the amount he had bid for the lots, and also the sum of $134.07, special assessment for a sidewalk, which he alleged he had paid to protect his purchase. Replication being filed to the answer, the cause was referred to the master to take the evidence and report his conclusions. After taking the evidence he made his report, finding the facts substantially as alleged in the bill and recommending a decree in favor of the complainants. Objections were filed to his findings, and overruled, and the same were renewed before the court by way of exception but again overruled, and a decree was entered setting aside and declaring null and void said tax deed, as against the complainants, as a cloud upon their title, and ordering the defendant, within five days from the

date of the entry of the decree, to "execute and acknowl-
edge and deliver a good and sufficient deed of convey-
ance, conveying the said real estate, and any interest by
him acquired by virtue of said tax deed therein, to said
complainants, and that in default of such conveyance
John M. Niehaus, the master in chancery of this court,
is hereby appointed special commissioner to execute such
deed and make said conveyance, and he is hereby ordered
to make such conveyance." It was also decreed that the
defendant pay the costs, and that in default of his so
doing execution should issue therefor.

The record of the tax sales in the office of the county
clerk relating to the sale of land in Smith Frye's addi-
tion to the city of Peoria for the year 1894, introduced in
evidence, as shown by the abstract, is as follows: "Re-
port by county collector of revenue for the year 1893 of
Peoria county upon which he has been unable to collect
taxes due, and now, on the 22d day of May, 1894, files
with the county clerk his petition for judgment and order
of sale for such property, etc. On line 7, in column 'To
whom assessed,' is the name of Julius S. Starr, part of
lot south half, int. lot 3, block 7. Column 'Special as-
sessment' shows two installments, one for $21.03 and
the other $21.02, and $2.15 interest, then 19c. costs, total
$44.39. Under column 'Sale,' 30c. Column 'By whom pur-
chased,' D. M. Combs. 'Part sold,' $\frac{1}{11}$ pt. 'Date of Sale,'
June 15, 1894. 'Amount of sale,' $44.69. 'Advertising fee,'
$1. Under column 'To whom deed given,' deed to Walter
Langlois, February 15, 1897." Similar entries appear on
the same record as to each of the other lots, 4 and 5. A
part of the record of the delinquent list relating to lots
3, 4 and 5, upon which said sale was made, was also in-
troduced in evidence, and the same, as shown by the ab-
stract, is as follows: "Page 17, entitled 'Warrant No. 4,'
dated the 28th day of November, 1892, and being for the
first and second installments of special tax for improve-
ment of Illinois avenue from Knoxville avenue to Buck-

201—20

ner avenue, with interest at six per cent per annum from October 1, 1892, on second installment. Then follows a list showing assessment on lot 3, block 7, first installment $42.05, second installment $42.05, and showing payment on north half on June 5, 1894, by John Waggeman of $42.05, $2.15 interest and 19c. costs, and showing sale on June 15, 1894, to D. M. Combs," etc., who, having assigned his certificate of purchase to the defendant, as shown by the record of sale, took a deed therefor.

It is clear that under the ordinance authorizing the improvement, only such property as abutted on Illinois avenue could be legally assessed. The word "contiguous," as used in the statute and the foregoing ordinance, means "in actual or close contact," "touching," "adjacent" or "near." (*County of Adams* v. *City of Quincy*, 130 Ill. 566.) Unless, therefore, it can be said that the south half of the lots in question were legally attached to the north half at the time of the levy of the assessment, the ordinance did not authorize a special tax to be levied upon them, and any attempt by the commissioners to do so was illegal and void. The evidence shows, without the slightest contradiction, that for twenty-five or thirty years the lots as originally platted had been divided into north and south halves, fronting on Knoxville avenue, and that the south half had been occupied, at the time of the passage of the ordinance and levy, by complainants as a homestead for more than fifteen years, entirely separate and distinct from the north half. They offered in evidence a deed from Augusta Degner and husband to them, describing the property conveyed as "the south half of lots 3, 4 and 5, block 7, in Frye's addition to the city of Peoria, county of Peoria, and State of Illinois," dated January 2, 1886, recorded May 25, 1888, and acknowledged by J. B. Corbett, who certifies that he is a notary public of Russell county, Kansas. The objection that this deed does not describe the lots as being in *Smith* Frye's addition is too technical. The evidence shows that there was no

other Frye's addition to the city of Peoria. Another objection is, that no certificate of magistracy accompanied the acknowledgment. The acknowledgment was not by a magistrate, but a notary public, as authorized by the second clause of section 20 of chapter 30 of the Revised Statutes. The deed, to say nothing of the complainants' long continued possession under it, clearly proved that they were the owners of the property.

The complainant James A. Cameron testified that the lots had been divided for at least twenty-five years, and that his first knowledge of the ownership of the south half was when Mr. Otis owned it, who conveyed it to Mrs. Marcey, and she to Mrs. Degner, from whom he purchased. A list of taxable town lots and blocks in the city and county of Peoria for the year 1892 was offered in evidence by complainants, which showed the north half of lots 3, 4 and 5 assessed in the name of John Waggeman and the south half in the name of M. M. Marcey. Cameron also testified that a fence, extending from the east end of complainants' half of the lots, on the north side thereof, up to the rear of their dwelling house, a distance of perhaps fifty feet, had been there about ten years; also, that he had a barn on their half, with fruit trees, outbuildings, etc., and "that it has been occupied as a residence, distinct from the north half, during all the time we have lived there."

How it can be seriously contended, under these facts, that the property in question fronts or abuts on Illinois avenue we are at a loss to perceive. Must it be said because the lots originally fronted on that street they could not be afterwards subdivided, sold and conveyed so as to make the south half front on another street? As a matter of fact, business lots are frequently so divided and conveyed. The original plats of towns and cities, or additions thereto, certainly do not furnish the only description of parcels or pieces of land therein situated. "The south half" of a particular lot is as good a descrip-

tion as "the whole" of a particular lot. The commissioners attempting to levy a special tax for the improvement of Illinois avenue were bound to know, from the recorded deed of the complainants and their possession, that the lots had been divided as claimed. Therefore, conceding that they did attempt to levy the tax upon the whole of the original lots, (which is by no means clear from the evidence,) their action in that regard was without authority and absolutely void. The ordinance gave no authority whatever to assess property not abutting on the street. There was no more authority in the commissioners to assess parts of lots seventy-five feet from the street and fronting on another, than there would have been for assessing lots in a block across a street south of block 7. There is no pretense that the complainants were personally notified that their property was being assessed. The only attempt to make them parties or give them notice was by the title "owners of abutting lots," etc. Notice to the owners of lots assessed was not notice to them, for the reason that their property did not abut on the street. The judgment of the county court confirming the special tax was not, therefore, a judgment against them or their property. It had no jurisdiction, either under the statute or the ordinance, to confirm a special tax against their property, and therefore all that is said in the argument about this being a collateral attack upon a judgment of confirmation is foreign to the case.

Another fatal objection to the validity of appellant's tax deed is found in the fact that the sale was for a tax never levied upon the south half of lots 3, 4 and 5. As shown by the record in evidence the county treasurer undertook to return as delinquent the south half of these lots for one installment of $21.03 and the other for $21.02, together with the interest, costs, etc., and the sale was made for those installments. Who made such an assessment upon the south half? Certainly not the commis-

sioners. They did not attempt to levy a tax of $21.03 and $21.02, or any other amount, on the south half or any other part of the lots. The county collector had no authority to assess the lots nor to apportion the assessment upon different parts of them. Assuming that the levy was upon the whole of each lot for installments of $42.05, the whole of each lot was delinquent for the part of the installments remaining unpaid, and the collector had no power to divide that installment, and especially had no right to assume that the commissioners, in assessing the lots as a whole, (if they did so assess them,) intended to place one-half of the amount on each half of the lots. The most that could be said upon this record would be, that the commissioners legally assessed installments of $42.05 on the whole of each lot. But even if that be conceded, how could it be held that they levied one-half of that amount on the south half? The reasonable inference would be, if the assessment could be apportioned upon the north and south halves, that the greater part should be assessed against the north half, which was adjacent to the street improved, and therefore, presumably, received the greater benefit. But we repeat, this record wholly fails to show any attempt whatever to levy a special tax for a definite amount against complainants' half of the lots. The first essential of a valid tax sale is the levy of a legal tax. In this case, both because no valid special tax could have been levied upon complainants' property and because the sale was for a tax not levied at all, the circuit court properly set aside the tax deed as illegal and void. *Gage* v. *Rohrbach*, 56 Ill. 262; *Barnett* v. *Cline*, 60 id. 205; *Wilmerton* v. *Phillips*, 103 id. 78.

The sale being void, it follows that the alleged payment of the sidewalk assessment, in order to protect the defendant's title, could in no view of the case be charged to the complainants; also, the tax being illegal and void, —in other words, the complainants' property being in no

way liable for the tax,—they could not be required to re-pay, or offer to re-pay, the amount bid by the defendant at the sale. (*Wilmerton* v. *Phillips, supra.*) The appellant was bound to know, at his peril, that the complainants were in fact delinquent in the payment of a valid tax assessed, which they had failed to pay. *Wilmerton* v. *Phillips, supra; Riverside Co.* v. *Howell,* 113 Ill. 256.

There was no error in requiring the defendant to pay the costs. Not only did he attempt to sustain an invalid title to the complainants' property, but refused, when offered the opportunity and requested, to surrender his certificate of purchase before the suit was brought. In so far as the decree below orders him to convey to the complainants it is erroneous. The relief should have been that he, his heirs and assigns, be perpetually enjoined from asserting title to the property. To that extent the decree below will be modified in this court and the appellees required to pay the costs of this appeal.

*Decree modified.*