*In re* JOHNSON'S ESTATE.

WILLIAMS *v.* KNISKERN.

1. TAXATION — SPECIAL ASSESSMENTS — CORNER LOT — MUNICIPAL CORPORATIONS—PAVING TAX.

An improvement tax for paving may be assessed against a corner lot for work done on both streets on which it lies, since it is benefited by the pavement on either street.

2. COVENANTS—PAROL EVIDENCE—VARYING DEED BY ORAL TESTIMONY.

It is incompetent to show by parol, in an action on a vendor's covenant against incumbrances, that the vendee agreed by parol to pay a tax which had become a lien on the property at the time of the conveyance.

Error to Muskegon; Sullivan, J. Submitted June 11, 1913. (Docket No. 82.) Decided November 3, 1913.

Albert L. Williams presented a claim against the estate of Anna Johnson, deceased, for breach of a covenant in a deed. From the allowance of the amount claimed, Philip W. Kniskern, administrator,

appealed to the circuit court. Judgment for claimant. Defendant brings error. Affirmed.

*Philip W. Kniskern,* for appellant.

*Cross, Vanderwerp, Foote & Ross,* for appellee.

MOORE, J. The following is taken from the brief of counsel for appellant:

"September 28, 1905, Anna Johnson transferred the southerly 59 feet in width of lot 3, of block 20, Sanford's addition to the village (now city) of Muskegon, which premises are also now known as the southerly or southeasterly 59 feet in width of lot 3, of block 239, according to the revised plat of the city of Muskegon April 9, 1903; said strip having a frontage of 59 feet on Ransom street, and extending same width in an easterly direction to the line between lot 3 and lot 5, of same block. This deed contained a warranty clause as follows:

"'That at the time of the ensealing and delivery * * * she is well seized of the above-granted premises in fee simple; that they are free from all incumbrances whatever; and that she will, and her heirs, executors, and administrators shall, warrant and defend against all lawful claims whatever.'

"This deed was recorded September 29, 1905. The expressed consideration was $1,250. * * *

"At the time of the making of the deed there were certain unpaid back taxes. This controversy is as to who should pay them, the grantor or the grantee. The grantee has paid them, and has brought this proceeding against the estate of the grantor to recover back the amount of such payments. The grantor's estate denies liability upon two grounds: (1) That the record does not show that these taxes were legally assessed against the land, or ever became a valid lien thereon. (2) That the grantee expressly agreed to pay these taxes as a part of the agreed consideration for the conveyance. The taxes involved were assessed against the premises in two improvement districts. * * *

"Resolutions were offered in evidence of the proceedings of the council May 8, 1902, reciting action

of the council and board of assessors on the 8th day of May, 1902, considering objections that might be made to the special assessments of Delaware street improvement district No. 2, at which time it appears said roll was confirmed. * * * On the 19th of June, 1902, like proceedings were had with reference to the special assessment roll of Ransom street improvement district No. 2. * * *

"The record discloses the fact that the assessment rolls of both districts covered the 59 feet belonging to claimant on lot 3; that the assessment was by frontage. This lot was made to contribute to both improvements, notwithstanding there was a full lot and seven feet lying between this description and that one, which fronted on Delaware street. It was a separate property, with a house standing thereon, and its only connection with the other property was that the city assessor had assessed the three lots as one parcel. * * *

"The charter for the city of Muskegon provides that the council must determine by resolution the necessity for the proposed improvement:

"Title XI, section 1. The cost of the improvement to be assessed must not be over 25 per cent. of the last assessment on the premises abutting the street to be improved.

"Title XI, section 2. The assessment must be by benefits or by frontage.

"Title XI, section 5. Notice must be given appointing time and place for reviewing the assessment roll.

"Title XI, section 7. Council to require board of assessors to apportion the tax.

"Title XI, section 13. Local Act 102, approved March 19, 1901.

"There is no evidence in this case that any one of the foregoing provisions was complied with.

"While it may be the rule that between the State and the taxpayer the burden of proof is on the person disputing the legality of the tax, and holding the tax roll *prima facie* proof of the regularity of all the proceedings leading up to it, the reasons for the adoption of such rule does not apply as between the parties to a covenant in a deed for a title free of any lien"—citing cases, among them *White* v. *Gibson*,

146 Mich. 547 (109 N. W. 1049); *Grand Haven Basket Factory* v. *City of Grand Haven,* 174 Mich. 279 (140 N. W. 609); *Van Zanten* v. *City of Grand Haven,* 174 Mich. 282 (140 N. W. 471)—to which cases reference will be made later.

We again quote from the brief:

"Where only one of a tract of several lots owned by the same person abuts upon the street, an assessment can only be levied against the abutting lot, unless the whole tract is used by the owner in disregard of the lot lines. [*Langlois* v. *Cameron*] 201 Ill. 301 [66 N. E. 332; *Smith* v. *City of Des Moines*], 106 Iowa, 590 [76 N. W. 836; *Barber Asphalt Paving Co.* v. *Peck*], 186 Mo. 506 [85 S. W. 387; *Wolfort* v. *City of St. Louis*], 115 Mo. 139 [21 S. W. 912; *City of Chester* v. *Eyre*], 181 Pa. 642 [37 Atl. 837]. Property separated from a street by a strip of ground, no matter how narrow, cannot be assessed as frontage; [*Crane* v. *French*] 50 Mo. App. 367, holding that an unplotted piece of land cannot be assessed where it was separated from the street by a strip of land five feet in width. 28 Cyc. p. 1125."

The following appears in the record:

"Alderman Reitdyk offers the following resolution, and moves its adoption:

"Whereas, this council and board of assessors did meet on the 8th day of May, 1902, for the purpose of reviewing and considering any objections that might be made to the special assessment on the lots and parcels of land contained in the special assessment district, known as Delaware street improvement, district No. 2; and, whereas, said roll was confirmed by the council and board of assessors as heretofore reported:

"'Therefore be it resolved, that the said special assessment roll for the Delaware street improvement district No. 2 be and the same is hereby confirmed by the concurrence of two-thirds of all the aldermen elect, and the amounts assessed to the various parties be collected directly from the roll. And be it further resolved, that the amounts of said special assessment be divided into six equal installments payable as follows: The first installment is due and payable immediately upon the adoption of this resolution; the second installment is due and pay-

able on the 8th day of May, A. D. 1903; the third installment is due and payable on the 8th day of May, A. D. 1904; the fourth installment is due and payable on the 8th day of May, 1905; the fifth installment is due and payable on the 8th day of May, 1906; the sixth installment is due and payable on the 8th day of May, 1907. All deferred payments of installments shall draw interest from this date to the date of payment at the rate of five per cent. per annum, payable annually on the 8th day of May in each and every year until the same is fully paid.

" 'And be it further resolved, that the recorder be and he is hereby instructed to indorse a certificate on said roll to show the date of the confirmation thereof. Dated May 8, 1902.

" '[Signed] HARRY A. REITDYK.

"Adopted by the following vote, viz.: Ayes—Aldermen Damm, Bomers, Hanson, Averill, Reitdyk, Monroe, Robinson, Sauer. Nays—None."

A special assessment roll was offered in evidence, upon which appeared the following:

"On Delaware street improvement district No. 2 assessment against lots 1, 2, and 3, block 20, Sanford's addition to the city of Muskegon, assessed to Anna Johnson, total assessment, $200.10.

"*The Court:* Carried out in installments?

"*A.* Yes, sir."

Then followed the installments.

"The certificate accompanying the same reads:

" 'STATE OF MICHIGAN,        }
" 'CITY AND COUNTY OF MUSKEGON. }  ss.:

" 'We, the undersigned, appointed by resolution of the council of said city, adopted the 27th day of March, 1902, a board of assessors to levy a special assessment on the lots, pieces, and parcels of land in said resolution described and constituting the special assessment district designated Delaware improvement district No. 2, do hereby certify and return that in accordance with said resolution we have levied on the foregoing assessment roll the sum of $2,879.59 on the said lots, pieces, and parcels of land, and have assessed to each lot or parcel of land such relative portion of such sum as the length of such lot or parcel fronting on said improvement bears to the whole

frontage of all the lots or parcels assessed; that we have entered and described on said roll all the lots, premises, and parts of lots in said resolution directed to be assessed, the valuation of each description, and the name or names of the persons chargeable with the assessments thereon.

" 'Dated Muskegon, Mich., May 1, 1902.

[Signed] " 'H. J. HANSON,<br>
" 'MAX LANGE,<br>
" 'C. S. GAMBLE,<br>
" 'Board of Assessors for Delaware Street<br>
Improvement District No. 2.

" 'STATE OF MICHIGAN, ⎱ ss.:<br>
" 'COUNTY AND CITY OF MUSKEGON. ⎰

" 'I do hereby certify that the council did, on the 8th day of May, A. D. 1902, by a vote of two-thirds of all the aldermen elect, confirm the foregoing assessment roll, and did, by the resolution confirming said roll, provide for the payment of said assessment in six equal annual installments.

" 'Witness my hand this 9th day of May, A. D. 1902.

" 'P. P. MISNER,<br>
" 'Recorder of the City of Muskegon, Mich.

" 'STATE OF MICHIGAN, ⎱ ss.:<br>
" 'THE CITY AND COUNTY OF MUSKEGON. ⎰

" 'To the Treasurer of the City of Muskegon:

" 'You are hereby commanded to collect from each of the persons named in the foregoing assessment roll the first installment of the amount of money assessed, and set opposite his name therein, with annual interest at the rate of five per cent., and, in case any person named in said roll shall neglect or refuse to pay said first installment of the assessment on demand, then you are commanded to levy and collect the same by distress of the goods and chattels of such person, and to return the amount so collected to the credit of Delaware street special paving fund No. 2, and return said roll and warrant, together with your doings thereon, to the recorder of said city in sixty days from the date of this warrant.

" 'Given under my hand this 10th day of May, 1902.

" 'THEO. D. MORGAN,<br>
" 'Mayor of the City of Muskegon.

" 'State of Michigan,          ⎫
" 'County and City of Muskegon. ⎬ ss.:

" 'I do hereby certify that I have compared the foregoing copy of the special assessment roll for Delaware street improvement district No. 2 with the original roll on file in my office, as confirmed by the council of said city, and that it is a true and correct copy of said original roll and of the whole thereof.

" 'Witness my hand and the official seal of said city this 10th day of May, 1902.

" 'P. P. Misner,
" 'Recorder of the City of Muskegon.
" '[City Seal.]'

"*Witness:* Lots 1, 2, and 3 of block 20, were assessed as one description. The fourth installment was not paid, and was reported delinquent October 23, 1905."

Later these delinquent taxes were put upon the roll. Like proceedings were had as to the Ransom street assessment.

The charter of Muskegon provides, among other things, as follows:

Sections 9 and 10 of Title XI, read as follows:

"Sec. 9. When any special assessment shall be confirmed by the council, it shall be final and conclusive; but no such assessment shall be confirmed, except by the concurrence of two-thirds of all the aldermen elect.

"Sec. 10. All special assessments shall from the confirmation thereof, constitute a lien upon the respective lots or parcels of land assessed, and shall be a charge against the person to whom assessed until paid."

Section 20 of title XI provides that the special assessment roll, and a certified copy of the order or resolution confirming the same, shall be *prima facie* evidence of the regularity of all the proceedings in making the assessment.

Section 12 of title X of said act reads as follows:

"Sec. 12. No general or special tax, special assess-

ments or charges created, ordered or assessed in said city, upon any property therein, shall be held illegal or invalid, for any matter of form, in any matter not affecting the merits of the case, and which shall not injure or prejudice the rights of the party assessed; and all taxes and special assessments and charges created, ordered and assessed in said city shall be presumed to be legally assessed, until the contrary is affirmatively shown, and no such presumption shall be rebutted, or any sale for taxes, special assessments and charges created, ordered or assessed in said city, be rendered invalid by showing that any paper, certificate, return or affidavit required to be made and filed in any office, is not to be found in the office where the same ought to be filed or found, but until the contrary is proved the presumption shall be, in all such cases, that such paper, certificate, return or affidavit was made and filed in the proper office."

The circuit judge made the following findings of fact:

"(1) That the said Anna Johnson in her lifetime, and on, towit, September 23, 1905, and for a long time prior thereto, had been and was the owner of lots 1 and 3, of block 20, of Sanford's addition to village, now city, of Muskegon, and said lots had been and were occupied as one parcel of real estate, upon which was situated a large brick apartment house, containing six flats; said building being upon practically all of said lots 1 and 2, and also extending upon and occupying the westerly seven feet of said lot 3, the frontage of said three lots, when considered as a whole, being 132 feet on Delaware street and 198 feet on Ransom street.

"(2) That prior to September 23, 1905, the city of Muskegon, acting under and pursuant to the provisions of its charter, caused said Delaware street to be paved, and caused the expense of said street improvement to be borne by special assessments upon lands fronting on and adjacent to the improvement. That a special assessment tax for the paving of said Delaware street was levied on said lots 1, 2, and 3, and became a lien thereon on May 8, 1902, and, under the provision of said charter of said city of Mus-

kegon, continued to be a lien thereon until paid; the amount of said special assessment being divided into six installments, one of which should be collected each year."

He made a like finding as to the Ransom street proceeding.

"That at the time of the aforesaid conveyance certain of the taxes for the special assessment for the paving of Delaware street, and also certain of the taxes for the special assessment for the paving of Ransom street, were then and there valid liens upon the said real estate so conveyed to the said Albert L. Williams by the said Anna Johnson, as aforesaid."

He rendered a judgment in favor of the plaintiff for $144.12, the amount of taxes he paid.

We have already seen that the special assessment rolls and the confirmation of the assessments in due form appear in the record. It also appears that the trial judge found the property was occupied as an entirety, and there is no testimony to show that this was not true. The record does not disclose that Mrs. Johnson questioned the method of spreading these taxes. On the contrary, it is shown that she paid the various installments as they became due up to the time of the making of the deed in this case.

This record is entirely different from those in the cases cited by counsel which we have mentioned earlier in the opinion. The case seems to be within *Nowlen* v. *City of Benton Harbor,* 134 Mich. 401 (96 N. W. 450), where the three lots had a frontage of 150 feet on East Main street and of 165 feet on Wall street. In that case, one of the lots was sold before proceedings to pave were taken, and the other two lots were included as one parcel in the assessment districts for each street. Chief Justice HOOKER, speaking for the court, said:

"It is obvious that it is impracticable to limit a corner lot to one assessment district, except by the arbi-

trary method of dividing the lot by some sort of an imaginary line, having one terminus at the corner of the lot where the streets intersect and the other at such place as the council shall designate; and it is apparent that the entire premises used as a parcel fronting on both streets share in the benefit to be derived from the use of the improvement upon either street, be it sewer, pavement, or any of the utilities, such as water or gas. When the benefits are apportioned by frontage, the total cost of the two improvements would fall upon the entire parcel, whichever method might be adopted, unless it be where there is such a disparity of cost that a levy of the assessments separately might exceed the statutory limit upon one parcel and fall below it on the other. We are of the opinion that it was competent for the council to say that this entire parcel was benefited by both improvements, and to assess it for each, provided it did not impose a greater burden than the statute permits, and it follows that the land may be in two assessing districts. We understand that the case of *Boehme* v. *City of Monroe*, 106 Mich. 401 (64 N. W. 204), does not hold to the contrary."

See, also, *City of Chester* v. *Eyre*, 181 Pa. 642 (37 Atl. 837); *Wolfort* v. *City of St. Louis*, 115 Mo. 139 (21 S. W. 912); *Goodrich* v. *City of Detroit*, 123 Mich. 559 (82 N. W. 255).

2. Did the court err in shutting out testimony to the effect that Mr. Williams agreed to pay these taxes? Counsel say this was error; that you may always show what is the consideration for the giving of a deed—citing *Mowrey* v. *Vandling*, 9 Mich. 39; *Breitenwischer* v. *Clough*, 111 Mich. 6 (69 N. W. 88, 66 Am. St. Rep. 372); and many other cases. An examination of the cases shows the question arose where the consideration for the deed was involved, and not where a covenant in a deed was to be construed.

The case of *Simanovich* v. *Wood*, 145 Mass. 180 (13 N. E. 391), which was an action for breach of a covenant of warranty against incumbrances in a

deed, the incumbrance consisting of an unpaid betterment assessment, would seem to be in point. In that case the court said:

"This is an action of contract on a covenant [of warranty] against incumbrances in a deed from the defendant to the plaintiff. It is admitted that an unpaid assessment upon the land was an incumbrance within the covenant. *Carr* v. *Dooley*, 119 Mass. 294. The defendant offered to prove, by parol testimony, that, at the time the deed was given, and as a part of the consideration, the plaintiff promised to pay said assessment.

"This evidence was rightly rejected. It directly varied and contradicted the written contract of the defendant. The covenant is against all incumbrances. The evidence offered was for the purpose of showing an oral agreement that the incumbrance created by the assessment was not within the covenant.

"While for some purposes it is competent to show what the real consideration of a deed is, a party cannot, under the guise of showing what the consideration is, prove an oral agreement, either antecedent to or contemporaneous with the deed, which will cut down or vary the stipulations of his written covenant. This would violate the well-settled rule of law which will not permit a written contract to be varied or controlled by such testimony. *Howe* v. *Walker*, 4 Gray [Mass.], 318; *Spurr* v. *Andrew*, 6 Allen [Mass.], 420; *Flynn* v. *Bourneuf*, 143 Mass. 277 (9 N. E. 650, 58 Am. Rep. 135). Exceptions overruled."

See, also, *Hayes* v. *Livingston,* 34 Mich. 384 (22 Am. Rep. 533); *Dye* v. *Thompson*, 126 Mich. 597 (85 N. W. 1113); *Morrill* v. *Morrill*, 138 Mich. 112 (101 N. W. 209, 110 Am. St. Rep. 306, 4 Am. & Eng. Ann. Cas. 1100); *Longe* v. *Kinney*, 171 Mich. 312 (137 N. W. 119).

Judgment is affirmed.

STEERE, C. J., and MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.