# Bond, Appellant, *v.* Philadelphia.

*Road law—Change of grade—Lot below surface of street—Damages— Viewers—Act of May 21, 1895, P. L. 89.*

Where a lot, before the change of grade of an abutting street, was five feet below the surface of the street, and after the change of the grade of the street was sixteen feet below the street level, the owner, in proceedings to assess damages, will not be permitted to show the amount and cost of the fill required within the surface of the lot, to a height which would correspond with that it had before the change in grade was made.

Where a witness called to estimate the damage to property caused by a change of grade does so by fixing the value before and then subtracting from it the cost of bringing the lot to the new grade, the testimony of such witness is properly stricken out.

The fact of the additional elevation, as affecting the value of the property after the change may be shown, but not the specific cost of changing the whole surface of the property by lifting it all up to a new grade.

In a proceeding to assess damages for injuries resulting from the change of grade of a street, the city may show that the elevation of the street was a part of a general scheme of improvement adopted by the city, which included among other things a public park in the neighborhood of plaintiff's land. Whatever affects the value of the land in the estimation of the general buyer, whether to raise or depress, may be shown.

On an appeal from an award of viewers appointed by the court to assess damages for injuries resulting from change of grade of a street, it is within the discretion of the court whether to allow or refuse the request for a view of the premises by the jury.

The Act of May 21, 1895, P. L. 89, providing for a view as a matter of right, has regard only to actions brought and not to proceedings on appeal from the award of viewers.

Argued March 25, 1907. Appeal, No. 1, Jan. T., 1907, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1905, No. 3,969, on verdict for defendant in case of Catherine A. Bond v. Philadelphia. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Appeal from award of jury of view. Before BEITLER, P. J.

The facts appear by the opinion of the Supreme Court.

At the .trial the court refused to permit the plaintiff to show what would be the cost of making the property conform with the new grade precisely as it conformed to the old grade. [1, 2]

The court refused the plaintiff's request that the jury be permitted to examine the property. [17]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1, 2) rulings on evidence, quoting the bill of exceptions; (17) refusing to permit the jury to view the premises.

*Alex. Simpson, Jr.,* with him *Harvey Gourley* and *Henry S. Cattell,* for appellant.—The plaintiff should have been allowed to prove the amount and cost of the fill made necessary by the

change of grade: Dawson v. Pittsburg, 159 Pa. 317; Patton v. Philadelphia, 175 Pa. 88; Reyenthaler v. Philadelphia, 160 Pa. 195; Darlington v. Allegheny, 189 Pa. 202; Shano v. Bridge Co., 189 Pa. 245; Mead v. Pittsburg, 194 Pa. 392.

The court permitted proof of, and charged the jury respecting certain proposed future improvements, beneficial to the whole southern section of the city. These tended to minimize the special damage done to plaintiff's land by the widening and elevation of Broad street: Markle v. Philadelphia, 163 Pa. 344; Aswell v. Scranton, 175 Pa. 173; Dawson v. Pittsburg, 159 Pa. 317; Watson v. R. R. Co., 37 Pa. 469; P., V. & C. R. R. Co. v. Rose, 74 Pa. 362.

The court erred in refusing plaintiff's motion that the jury be taken to view the premises: Zug v. Pittsburg, 194 Pa. 367; Frazee v. Light & Heat Co., 20 Pa. Superior Ct. 420.

*J. Howard Gendell*, with him *James Alcorn*, assistant city solicitor, and *John L. Kinsey*, city solicitor, for appellees.— The case is ruled by Mead v. Pittsburg, 194 Pa. 392. See also Chambers v. South Chester, 140 Pa. 510.

OPINION BY MR. JUSTICE STEWART, June 3, 1907:

The plaintiff is the owner of a tract of vacant land in the city of Philadelphia, containing about eight and a quarter acres. Broad street intersects it, affording it a frontage on the west side of 243 feet, and on the east side of 460 feet. Before the change in grade of the street, that part on the west side was five feet below the surface of the street, while that on the east side was three feet above. By municipal action the grade in the street has been elevated some eleven feet, and in consequence plaintiff's land on the one side is now nine feet below the surface of the street, and on the other side sixteen feet below. In the proceeding to determine what damage plaintiff had sustained, if any, by this change, the plaintiff offered testimony to show the amount and cost of the fill required to bring the surface of her lot to a height which would correspond with that it had before the change in grade was made. The offer was excluded, and this ruling of the court is assigned for error. There are a number of specifications, but all may be considered together.

It is sought to distinguish this case from Mead v. Pittsburg, 194 Pa. 392, upon which the court relied in its ruling, by reason of the fact that there the offer was to show the cost of the fill required in order to make the surface of the land correspond with the level of the street, while here the offer had regard to the cost of only so much of the fill as would be necessary to bring the surface of the lot as near to the level of the street as changed, as it had been to the level of the street before the change was made. In that case as in this, the original level of the lot was below the level of the street, and while it is true that there the offer was to show the cost of the fill that would bring the lot to a level with the elevated street, it is manifest from the opinion that the same reasons that prevailed there to exclude the offer must prevail here. The determining feature in that case was the fact that before the grade of the street was changed, the plaintiff's lot was below the street surface. The opinion recognized the right to show the cost of restoration to the original condition where such expenditure is a necessary one; as where by a change in the grade of a street a lot, which before was on a level with the street, has been left above or below it. "In that kind of a case," says the court, "the change of grade has inflicted a special change in the condition of the property as it was, for which the party is entitled to be compensated, because a restoration to the original condition, as near as may be, is a subject of necessary expenditure which may be properly shown, not as a basis of specific recovery, but as affecting the value before and after the injury. But here the whole lot of the plaintiff having already been below the level of the adjoining streets, the plaintiff is not entitled to have his entire property lifted up to a level of the street as is made by raising the grade. There is simply an increase in the elevation of the grade, and the fact of such additional elevation, as affecting the value of the property after the change, may be shown, but not the specific cost of changing the whole surface of the property by lifting it all up to a new grade. The surface never was at such an elevation, and there is no obligation to put it there, but if the fact of the additional elevation of the grade is an injury to the market value of the property, the extent of that injury may be shown, and that is the difference in market value be-

fore and after." The plain logic of the decision is that where conditions have been interfered with which called for no change in order to make the land available and adaptable for the purposes which determine its market value,—in the present case for building purposes, no other value being suggested,— the restoration of these conditions is what the general buyer would contemplate, and the cost of such restoration is to be regarded as a necessary expenditure for which the party is entitled to compensation; not, however, to be made the basis of specific recovery, but to be considered as an element affecting the market value of the land. Such conditions did not exist in the present case any more than in the case referred to; plaintiff's land never was at the street level, and the change is only one of degree. It is impossible to understand how any such inquiry as that proposed would aid the jury in ascertaining the difference in market value before and after the change. It ought to be quite as easy to determine the market value of a lot sixteen feet below the surface of the street it adjoins, as the market value of one only five feet below. The witnesses had no difficulty in arriving at the market value of plaintiff's lot when it was five feet below the surface of Broad street; the same familiarity with values ought to enable them to say what its market value now is when sixteen feet below. If this be so, and we see no reason why it should not be, any inquiry as to the cost of filling would be irrelevant and of no help in the determination of the real question. The assignments of error which refer to the exclusion of evidence offered to establish the amount and cost of fill required are overruled.

James Bond, a witness called by the plaintiff, testified in his examination in chief that the market value of the land before the change in grade of the street was $125,000, and that its value after the change was $60,000, thus fixing the damage at $65,000. On cross-examination he said that he had arrived at his estimate of present value by estimating in a general way the cost of bringing the lot up to the grade of the street, and the area of the ground taken for the widening of the street at a specific price per foot, and by then deducting the aggregate value of these two items from what he had determined as the market value of the land before the change. This was but another way of introducing into the case the element of cost

of filling, somewhat more indirect than the method first attempted, but equally objectionable. In the one case, had the offer been admitted, the jury would have had the figures from which they could have made their own calculation; in the other they would be given the result, without the figures, on which the calculation was based. If it was improper for the jury to take into consideration the cost of the fill, it would be equally so for them to consider the conclusions of the witness based on conditions and circumstances which they were instructed properly enough to disregard. There was no error in striking out the testimony of this witness.

The admission of evidence to show that the elevation of Broad street was a part of the general scheme of improvement adopted by the city, which included, among other things, a public park in the neighborhood of plaintiff's land, is assigned as error. It is but repeating a familiar principle that whatever would affect the value of the land in the estimation of the general buyer, whether to raise or depress, may be shown. If the establishing of a public park convenient to plaintiff's land would add to its value, it is hardly supposable that with the ground for the park already paid for and the park itself partly improved, the general buyer would not allow the probability of its completion to influence his bid. The evidence was properly admitted.

It was within the discretion of the court whether to allow or refuse the request for a view of the premises by the jury. The proceedings were begun before a jury of view. The Act of May 21, 1895, P. L. 89, making such view a matter of right, has regard only to actions brought, and not to proceedings on appeal from the award of viewers appointed by the court. This was expressly ruled by the Superior Court in Frazee v. Light & Heat Company, 20 Pa. Superior Ct. 420, and in the view there expressed we fully concur.

The assignments of error are overruled and the judgment is affirmed.