## Hill v. Oakmont Borough, Appellant.

*Road law—Change of grade—Damages—Witness—Evidence.*

1. In a proceeding to ascertain damages resulting from a change of grade of a borough street, the owner of the land is a competent witness to testify on his own behalf, where it appears that he had occupied the premises in question for eighteen years, that he knew the cost thereof, the improvements thereon and the prices at which his neighbors held their properties, and this is the case although he may not have been

able to name the figure at which more than one property was sold at about the time the street was graded.

2. In such a proceeding it is admissible to show what uses the property was capable of and how such uses were interfered with; that by the improvement the property had been made inaccessible or less accessible, and that it was less adapted to the purposes for which it was held than formerly. Thus the jury may take into consideration as one of the elements of damages the cost of constructing a retaining wall so as to save as much of the surface of the lot as could be preserved after the change of grade was effected.

3. If the evidence does not fix a particular height of the retaining wall as necessary, the fact that one witness testifies that he thought a wall three feet above the surface of the ground would be sufficient, does not prevent the plaintiff from showing the cost of a wall four feet above the ground.

4. In a proceeding to assess damages for a change of grade of two borough streets at the intersection thereof, it is not necessary for the plaintiff to show the enactment of an ordinance authorizing the change of grade, where it appears that one of the streets was graded and paved by the borough and the other was graded to conform to the grade of the paved street.

Argued April 12, 1911. Appeal, No. 29, April T., 1911, by defendant, from judgment of C. P. No. 2, Allegheny Co., April T., 1907, No. 354, on verdict for plaintiff in case of Robert T. Hill v. Oakmont Borough. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from report of viewers. Before SHAFER, J.

At the trial the plaintiff was examined as follows:
"Q. What, in your opinion, was the difference in the market value of your property—"

Objected to, as the witness is not qualified to express an opinion.

"Q. How long have you lived there? A. Since 1887. Q. Did you build the house that is on the premises? A. No, sir. Q. That was built there when you bought it? A. When I bought it. Q. How old was the house at that time? A. Why, it was probably a year old when I bought

it. Q. Have you any knowledge of the market values of property in the neighborhood? A. At what time? Q. Well, as of the time when this cut was made?"

The Court: Or about that time.

"A. Why, I can't recall any sales at that time. Q. Well, would you feel yourself competent to express an opinion as to the value of that property? A. I think so. Q. At or about that time? A. Yes, sir. Q. Have you kept in touch with transactions in real estate in the neighborhood? A. I try to; yes, sir."

Cross-examination (as to competency) by Mr. Meals: "Q. You don't know anything about the values except your own property there, do you? A. Why, I have fixed the value of mine by the value that my neighbors put on theirs. Q. What neighbors in 1905 put a value—what property do you mean? A. People on the same street. Q. Name some property? A. Is it necessary to name them? Q. Yes. A. Mr. Henderson, for instance. Q. What value did Mr. Henderson put on his property? A. He put $9,000 to $10,000 on his property. Q. His property is not the same kind and character as this? A. Not quite; his house is probably a little larger. Q. His house is very much larger and his property is on a grade with the street?"

The Court: Well, that doesn't make any difference.

"Q. What sales did you know of in the year 1905? A. Sales? I can't recall any. Q. You don't recall any sales at all? A. No, sir. Q. Property was active in Oakmont in 1905? A. Yes, sir. Q. Quite a good deal of property on these streets changed hands? A. I suppose it did. I didn't keep a close tab on them. Q. What did the Pitcairn property in 1905 sell for? A. I can't recall those figures. Q. The Pitcairn property is right across the street from yours? A. Yes, sir. Q. Do you know whether it was sold in 1905 or not? A. Along about that time, I think. Q. What did the property at the corner of Sixth street and B street sell for in 1905, known as the John A. Patterson property? A. I can't recall those figures."

Mr. Meals: We object to his testifying, because he is not competent.

Objection overruled.  Exception. [1]

Mr. Miller: "Q. What, in your opinion, was the difference in the market value of your property before and after the cut, and as affected by the cut?  A. About $3,000, I would figure it; $2,500, to $3,000.

A. S. Leach, a witness for plaintiff was asked this question: What do you think, with reference to the terracing of that property?  Would it put it in good condition?

Objected to; he has not qualified, and objected to as incompetent.

"Q. Have you had experience in selling houses upon terraces?  A. Yes, sir.  Q. And houses surrounded by retaining walls?  A. Yes, sir.  Q. What have you found with reference to terraced properties, where the terrace is five or seven feet high and the house is located close to the line, as in this case?  A. As a rule, people object to terracing, terraces of any kind."

Mr. Meals: "Q. What is the answer?  A. You find people object to terraces, as a rule.  Occasionally, you will find a man who wants them, but the majority of people like a level lot.

Mr. Miller: What would you say, in your opinion, is the best way to fix that property as it stands at present?

Objected to as before.

Objection overruled.  Exception. [2]

"A. I should say the right way to fix it, if I owned it, would be to put a retaining wall around the entire lot. Q. How high would you make the wall?  A. I would say three feet, and taper the lot down to the top of the wall."

N. C. Garron, a witness for plaintiff was asked this question: "Q. You are familiar with the property of R. T. Hill?  A. Yes, sir.  Q. And how high have you calculated this wall to be?  A. I counted six feet altogether, with the coping.  Q. Including the coping?  A. Yes, sir; five and one-half feet stone work and six inches coping.  Q. How much below the surface and how much above?  A. I

figured two feet below the surface and four feet above, including the coping. Q. Do you know when the change of grade took place? A. Yes, sir. Q. Did you make an estimate about that time of what it would cost to put in a stone wall of this character? A. Yes, sir, I did; I think that included W. D. Hill's property also. Q. Well, can you state now what the cost of putting in a stone wall of that character would have been? A. Just R. T. Hill's property or both? Q. No, just R. T. Hill's."

Objected to as incompetent and irrelevant.

Objection overruled. Exception. [3]

"Q. You have a new estimate and you have an old estimate? A. Yes, sir; I have the old one; I think Mr. Hill has the old one. (Paper shown witness.) Q. I hand you this paper to refresh your recollection as to the old estimate."

The Court: If you want to cross-examine him as to his competency and knowledge of stone walls, you can do that.

Mr. Meals: We do not care to cross-examine at present.

Mr. Miller: "Q. What did you estimate at that time the cost would be of putting in such a wall? A. R. T. Hill's property? Q. R. T. Hill's property. A. I estimate R. T. Hill's property at $850. Q. Did that include stone steps? A. Stone steps and coping complete, just excavating for the wall, not any more. Q. It didn't include terracing? A. No, sir. Q. Some terracing would be necessary above that? A. Oh, yes; it would have to be."

1. This action is an appeal from the award of a board of viewers appointed under the provisions of the Act of May 24, 1878, P. L. 129, providing for the appointment of viewers to assess damages for change of grade where the proper authorities of the municipality made such change, and there is no evidence in this case showing that the proper authorities of Oakmont borough authorized the change of grade complained of in the statement of claim, and no evidence in this case to show what change of grade, if any, was authorized by the proper authorities of Oak-

266    HILL *v.* OAKMONT BORO., Appellant.

Statement of Facts—Opinion of the Court.    [47 Pa. Superior Ct.

mont borough, and the verdict must be for the defendant.
*Answer:* Refused. [4]

3. Under the pleadings and evidence in this case the
verdict must be for the defendant. *Answer:* Refused. [5]

Verdict and judgment for plaintiff for $1,240. Defendant appealed.

*Errors assigned* were (1, 2, 3) rulings on evidence, quoting bill of exceptions, and (4, 5) above instructions.

*H. J. Thomas,* of *Thomas & Meals,* for appellant.—
Plaintiff was not a competent witness: Friday v. Penna.
R. R. Co., 204 Pa. 405; Shaffer v. Reynoldsville Borough,
44 Pa. Superior Ct. 1.

*Frederic W. Miller,* for appellee, cited: Union Pac. R. R.
Co. v. Lucas, 136 Fed. Repr. 374; Patton v. Philadelphia,
175 Pa. 88; Strathern v. Braddock Borough, 11 Pa. Superior Ct. 1; Closser v. Washington Twp., 11 Pa. Superior
Ct. 112.

OPINION BY HENDERSON, J., July 13, 1911:

The question for determination in the court below was
the amount of damage which the plaintiff sustained by
reason of the change of grade of two of the borough streets
at the intersection of which the plaintiff owned a lot. The
extent of the injury was to be ascertained by a consideration of the value of the property before and after the improvement, and evidence was introduced on this point in
support of the contentions of the respective parties. Objection was made to the admissibility of the plaintiff's
testimony because he had not qualified as an expert on the
value of real estate. He was not examined in chief, however, in regard to the market value of his property before
and after the alleged injury but only testified as to the
amount of damage which he had sustained. It was said
in Michael v. Crescent Pipe Line Co., 159 Pa. 99, that
market value is a price fixed in the mind of the witness

from a knowledge of what lands are generally held at for sale and at which they are sometimes sold bona fide in the neighborhood.   This necessarily implies a knowledge of the land, its quantity, condition and the uses to which it may reasonably be applied.   The general selling price is not to be shown by evidence of particular sales of similar property, but from a conclusion based on sales which may have been made or on the prices at which property is held in the neighborhood by the owners.   These qualifications we think were fairly exhibited by the plaintiff.   He had been the owner and occupant of the premises in question for eighteen years.   He knew its cost, its improvements, and the prices at which his neighbors held their property. He had observed sales of land in the neighborhood during the years in which he had lived there and would naturally form an estimate of the value of his own property from such data although he may not have been able to name the figure at which more than one property was sold at about the time when these streets were graded.   A man owning and occupying his own home for many years and hearing estimates of the value of their property by other owners in the vicinity is ordinarily well qualified to estimate the value of his own property.   It would be difficult to find a person of ordinary intelligence who had owned a house and lot for a considerable period who had not an. opinion as to its value, based on information of comparative values in the neighborhood.   But it is not necessary to rest the point on the general competency of the witness, for his testimony in chief was limited to the relative value of the property before and after the change and this was held in Dawson v. Pittsburg, 159 Pa. 317, to be competent. In that case the witness could not state the price at which property in that neighborhood was held, but the court said: "A man may know the effect on the relative value without being able to fix the actual market price.   Such evidence is admissible at least in corroboration of others who may give definite figures."   Other evidence was introduced by the plaintiff showing definitely the market price of the

property before and after the change of grade, and the plaintiff's evidence corroborated that testimony. Moreover, on cross-examination the defendant's counsel obtained from the witness an opinion of the market value of his property before the injury and afterward, and this corresponded with the estimate he had given in chief of the extent of his damage and produced the same effect as to the amount of damage which the evidence objected to in the first assignment of error gave.

The rule that the measure of damages in such cases is the difference in the market value of the property before and after the injury is well established. But the inquiry is not restricted to this single question, for otherwise the jury would not obtain pertinent information as to the soundness of the opinion of the witness. It would become to a great degree a matter of the number of witnesses on each side rather than a determination based on the convincing force of reasons. As estimates of the value of real estate are necessarily matters of opinion and the value of opinion depends on the knowledge and sound judgment of the witness it is important that the jury have such information as would enable them to give due weight to the opinions of the witnesses. For this reason evidence is admissible to show what uses the property was capable of and how such uses have been interfered with; that by the improvement the property has been made inaccessible or less accessible; that it is less adapted to the purposes for which it was held than formerly; for which the party is entitled to be compensated on the ground that a restoration to the original condition as near as may be is a subject of necessary expenditure which may be shown, not for the purpose of a recovery for such expenditure, but as affecting the value before and after the injury. This doctrine was applied in Dawson v. Pittsburg, 159 Pa. 317; Patton v. Philadelphia, 175 Pa. 88; Mead v. Pittsburg, 194 Pa. 392; Shaffer v. Reynoldsville Boro., 44 Pa. Superior Ct. 1; Strathern v. Braddock Boro., 11 Pa. Superior Ct. 1. The latter case was one of a change of grade, the

effect of which was to leave the property at an elevation above the original grade. Evidence was admitted showing the cost of adjustment of the lot to the new condition, including the building of a retaining wall, and the court charged the jury: "If there was grading to be done in order to put it in marketable shape; or if there was sloping; or if there was a wall to be built those are matters of which it is proper that you should know the cost, but this is with a view of enabling you to determine what the real market value of it was after the improvement was made, after the street was graded. None of these are distinct elements of damages." This instruction was approved in the opinion of Judge ORLADY who said, "A retaining wall or a substituted terrace was necessary to adapt the property to the changes made by the borough on Fifth street, and the evidence, of which complaint is made in the assignments, was carefully restricted by the court." Evidence of the cost of producing a condition of the property never existing before was excluded in Mead v. Pittsburg, 194 Pa. 392, and Bond v. Philadelphia, 218 Pa. 475. These were cases, however, in which the property involved was below the grade before the improvements were made, and the change was an increase in the elevation of the street. The offer in one case was to prove what it would cost to bring the whole lot up to the new grade and in the other to bring the level of the lot up to the same relative position to the new grade which it formerly occupied to the old. But the court held that neither of these propositions could be entertained as the new condition was one of degree only. This is not the situation of the appellee, however. His lot was at grade with one of the streets and substantially so with the other except at the angle where the street was one or two feet below the corner of the lot. The cut left the surface about seven feet above the street at the intersection and several feet along the side. In ascertaining what damage the owner sustained it was proper to consider the most economical and advantageous way of preventing further loss and giving him the same enjoyment

of his property as far as could be done which he formerly had. The proximity of his house to the cut on each street made it important that the bank be retained in order that his damage be kept at the lowest point. The sloughing away of the banks by the action of the elements would produce a continuing loss. Whether this could be prevented by the construction of a retaining wall or by a system of terracing, and what was the best method of saving as much of the surface of the lot as could be preserved, and what would be the cost of such a plan, were proper subjects for consideration in determining the value of the property after the grading was completed and the consequent damage to the plaintiff. The jury was not allowed to consider this subject as a distinct item of damage to be computed with any others which might exist in the case, but was permitted to take it into account in reaching a final conclusion. This was a subject of necessary expenditure for the preservation of the property and the diminution of the plaintiff's loss. The principle applied in Dawson v. Pittsburg, 159 Pa. 317 and Patton v. Philadelphia, 175 Pa. 88, makes evidence of this character competent. The cost of sloping or terracing or construction of a retaining wall and the erection of steps necessary to make the property available for use at the new grade and with the least loss to the owner was a material fact to be regarded in ascertaining the injury. These cases were followed in Shaffer v. Reynoldsville Boro., 44 Pa. Superior Ct. 1. There, the owner's property was at grade with the street before the change and was adapted to the uses to which it was then put. The elevation of the street made the property less valuable and required a change to give convenient access to the street. The cost of this change was held to be a proper subject of proof in determining the damage caused by the new grade. Edsall v. Jersey Shore Boro., 220 Pa. 591, involves the question decided in Mead v. Pittsburg and Bond v. Philadelphia, but it is not inconsistent with the cases above cited. If in the opinion of competent witnesses the construction of a low retaining

wall was the best means of preserving the property from further damage we see no reason why a witness familiar with the cost of the construction of walls should not be permitted to testify as to the expense of such a structure. That is only one of the factors entering into the problem of damage and is admissible not to establish an amount for which the defendant is liable but to aid the jury in ascertaining what the plaintiff's actual loss was, and no reason has been suggested why the witness who is competent to testify about the cost of stone walls must also be an expert on the value of real estate.

We do not attach importance to the matter embraced in the third assignment. The evidence did not fix a particular height of the retaining wall as necessary, and the fact that one witness testified that he thought a wall three feet above the surface of the ground would be sufficient did not prevent the plaintiff from showing the cost of a wall four feet above the ground. The latter witness included in his estimate the height of a coping so that the difference in the height of the walls referred to by the two witnesses was only six inches. And as the wall would then be a considerable distance below the level of the lot it was not error to admit the evidence on that point. Moreover, no objection was made to the testimony on this ground. The objection to the evidence proposed to be offered by the witness related to the competency of evidence to show the cost of a stone wall, but there was no intimation to the court that the evidence was objectionable because the witness testified about a wall four feet high instead of one three feet high. It is to be noticed also that the estimate of this witness was not as high as that of another who based his calculation on a wall three feet high with a six-inch coping on the top, so the defendant was not harmed by the evidence.

The objection that there was no evidence that the borough authorities did any of the grading on either of the streets is well answered in the opinion of the learned trial judge on the motion for judgment non obstante veredicto.

The plaintiff's statement contains a declaration that an ordinance was regularly enacted and that the work was done thereunder.   To this the defendant pleaded among other things that the thing charged against it was a public improvement made by authority of law and that special benefits were received therefrom.   Under the pleadings we do not regard it as necessary that the plaintiff show the enactment of the ordinance.   One of the streets was graded and paved by the borough and the other was graded to conform to the grade of the paved street.   There is no pretense that it was not a municipal improvement, and the technical objection presented in the fourth assignment ought not to be sustained.

We do not find anything in the record which requires a reversal.

The judgment is affirmed.