## Occhibone Appeal

*Marvin A. Luxenberg*, for appellant.
*Maurice Levinson, City Solicitor*, for appellee.

LYON, J., July 30, 1971.—Before the court for determination is the appeal of Lawrence Occhibone from the action of the Council of the City of New Castle dismissing him from the city police department. Pursuant to the stipulation of counsel, the hearing on appeal was divided into two parts: (1) Procedural questions, and (2) whether under the evidence the action of council was appropriate. This opinion deals only with the procedural questions raised in the first part of the appeal.

Appellant was a patrolman of the City of New Castle and in this capacity investigated on December 20, 1970, an automobile accident involving a vehicle owned by John P. Essinger. Two days later, on December 22, 1970, he was suspended by the Chief of Police for "Conduct Unbecoming a Police Officer" in connection with the automobile accident investigation. Thereafter, Mayor Carl A. Cialella, Jr., on January 5, 1971, filed a complaint against appellant, requesting city council to discharge him as an employe of the City of New Castle. Thereupon, council set January 21,

1971, as the time for hearing evidence upon the charges. Appellant appeared with his counsel at the five-hour long public hearing, gave evidence and was accorded the right of crossexamination. Thereafter, the members of council deliberated the matter at informal meetings, apparently private, which were held on January 23rd, 25th and 27th. Even though the majority of the members of council decided at the last informal meeting that the dismissal should be upheld, no formal action was taken at the regular council meeting held on January 28, 1971, or during the following regular council meeting held on February 11, 1971. However, appellant and his counsel on January 28, 1971, received a letter signed by the president of council, Eugene DeCaprio, stating that council was upholding the complaint of the mayor and that he was dismissed effective January 29th. An appeal from the purported action of council dismissing appellant as an employe of the city was timely filed on February 18, 1971. At the next regular meeting thereafter held on February 25, 1971, the city council adopted a resolution approving and confirming the dismissal of appellant as of January 28, 1971.

The parties agree appellant is a civil service employe entitled to the full protection of the civil service provisions of the Third Class City Code of June 23, 1931, P. L. 932, art. XLIV, sec. 4408, as amended, 53 PS §39408 (hereinafter referred to as the Civil Service Act). The Civil Service Act clearly gives the Court of Common Pleas jurisdiction to hear the appeal de novo. The scope of review on appeal includes an examination of the fundamental fairness of the procedure utilized to dismiss the employe: Gardner v. Repasky, 434 Pa. 126, 252 A.2d 704 (1969); Hill v. Alexander et al., 338 Pa. 26, 11 A.2d 884 (1940); McCartney v. Johnston et al., 326 Pa. 442, 191 Atl. 121 (1937). The man-

datory provisions of the civil service law relating to suspensions or discharge of employes protected by the act must be followed and strictly complied with by city officials: Hill v. Alexander, supra.

The record of the proceedings of removal should show affirmatively: (1) That charges sufficient in law were preferred; (2) that due notice was given; (3) that a trial was had where the officer was permitted to be heard; and (4) that an appropriate judgment or order was rendered. Appellant challenges the record of the removal proceedings with respect to the first and fourth requirements only.

Appellant's contention that the charges were not sufficient and illegal is bottomed upon the Civil Service Act provision which provides:

". . . no employee shall be suspended more than one time for the identical or same violation or act of misconduct."

The record shows that appellant was suspended on December 22, 1970, for a period of 10 days because of conduct unbecoming a police officer during the accident investigation involving a vehicle owned by John P. Essinger. Appellant asserts that because the same identical language was used in both the suspension and the complaint of January 5, 1971, the suspension and dismissal were for the same acts of alleged misconduct. He also insists that parol evidence is inadmissible to explain the conduct referred to by the term "conduct unbecoming a police officer." We disagree. The Civil Service Act expressly authorizes the director of a department to suspend a police officer for a period of 10 days for misconduct, with or without pay, without preferring charges and without a hearing before the city council. It also expressly provides that misconduct is grounds for filing charges. Unless parol evidence is admissible to show the specific misconduct

or acts which constitute the conduct unbecoming a police officer, it is wholly possible that subsequent action against a police officer would be precluded by a suspension involving an entirely different transaction, even though city officials had wholly complied with the Civil Service Act requirements. It cannot seriously be contended that the legislature intended such an absurd and unreasonable result. Moreover, preclusion of parol evidence in such circumstances could work seriously to the disadvantage of municipal employes, for this would permit easy circumvention of the "identical or same violation or act of misconduct" test of the Civil Service Act merely by describing the identical conduct with a different styling or denomination. The statute does not mandate the keeping of records of suspensions or of charges involving a police officer. It is conceivable, therefore, that the right of a police officer not to be penalized twice for the identical act of misconduct could be enforced only if parol evidence is admissible. Contrary to appellant's contention, the relevant parol evidence does not contradict the records, but rather merely explains the vague and ambiguous term, "conduct unbecoming a police officer," as used by the chief of police in the suspension notice to appellant.

Appellant asserts in the alternative that the applicable statutory language of the Civil Service Act must be construed to preclude a double penalty for acts or misbehavior involved in the same transaction and asserts that the testimony of the chief of police is, therefore, favorable to him. The oral testimony of Chief of Police Hanna demonstrated that both the suspension of appellant and the charges against him were based upon the same accident investigation, but that the charges were bottomed upon evidence not in possession of the police department at the time the suspension

was made. The plain meaning of the language used by the legislature in the Civil Service Act, "identical or same violation or act of misconduct," does not support appellant's contention. On the contrary, it clearly appears from the language that the statutory prohibition against double penalties shall extend only to proceedings involving the identical or same violation. The courts have refused to apply the same transaction test advocated by appellant to protect an accused in a criminal case against a double penalty. The Pennsylvania Superior Court in Commonwealth v. Moon, 151 Pa. Superior Ct. 555, 30 A.2d 704 (1943), and the United States Supreme Court in Ashe v. Swenson, 397 U.S. 436, 25 L.Ed. 2d 469, 90 S. Ct. 1189 (1970), have held that the same transaction may justify a conviction of several crimes if each crime requires proof of a fact not included in the other crimes. The Civil Service Act cannot be construed more broadly in view of the restrictive nature of the statutory language.

Appellant next contends the court on an appeal may not consider a resolution adopted after the appeal was perfected. The resolution dismissing appellant was adopted on February 25, 1971, seven days after he had perfected his appeal from suspension of January 28, 1971. We find the contention without merit, for it appears contrary to the holding of E. E. Hollenback, Inc. v. Hadley et al. 312 Pa. 176, 167 Atl. 574 (1933), where the Supreme Court bottomed its decision upon a resolution or ordinance of a city council which was passed after the appeal was perfected. The Civil Service Act does not require council to act within a specified time, and the resolution was passed by it 35 days after the evidentiary hearing upon the charges. That such a delay is not unreasonable is clear from the holding of Docherty v. Philadelphia, 369 Pa. 118, 85 A.2d 143 (1952), where the Supreme Court held that

a civil service employe was properly discharged by an order filed 41 days after the hearing, even though the civil service statute in that case required a determination of the charges within 30 days.

Council obviously intended the resolution of February 25th as a ratification of the informal action taken by council on January 28, 1971, when it informed appellant by letter that it was upholding the dismissal. But this action of the members of council was not at the regular meeting held on that date and is, therefore, wholly void for council may act only at a meeting duly called and authorized by law at which under the law or regular rules of procedure the particular action can be taken. An agreement of the members of council, even though unanimous, at an informal meeting does not constitute an action of council: Edsall v. Jersey Shore Borough, 220 Pa. 591, 70 Atl. 429 (1908).

However, a municipal legislative body may ratify its void acts where it appears that the proceedings were taken with full knowledge of the invalidity and the validation was of an act within the scope of the municipal corporation to enact: Chester v. Eyre, et al. 181 Pa. 642, 37 Atl. 837 (1897); Shiloh Street, McCormick's Appeal, 165 Pa. 386, 30 Atl. 986 (1895); City v. Hays, 93 Pa. 72 (1881). Assuming, but not deciding, these conditions are satisfied by the resolution of February 25th, we are loath to conclude it validated the void action of council of January 28th. Appellant was suspended with pay pending action of council. Hence, his right to be paid for the intervening days was vested when the resolution was adopted and council may not constitutionally impair his contractual right to receive such payment: Beaver County Building & Loan Association v. Winowich, et ux., 323 Pa. 483, 187 Atl. 481 (1936); Duane v. Philadelphia, et al., 322 Pa. 33, 185 Atl. 401 (1936).

Without question, where a resolution is void, a subsequent resolution that cannot be enforced of itself and that purports to ratify or confirm a prior resolution, is invalid. However, a ratifying resolution complete in itself, as required by the applicable statutes, and otherwise free from invalidating defects, is valid although its plain intent is to ratify a previously adopted resolution that is void: City of Sioux Falls v. Kadinger, 74 ·S.D. 217, 59 N.W.2d 631 (1953); Board of Commissioners of City of Newark v. Grodecki, 21 N.J. Misc. 241, 33 A.2d 115 (1943). The resolution of February 25th obviously falls within the latter classification of a legislative enactment complete in itself.

Appellant contends, however, that the resolution is not otherwise free from invalidating defects and asserts the resolution is invalid because the adoption was not as required by the optional Third Class City Charter Law: Act of July 15, 1957, P.L. 901, sec. 101, et seq., 53 PS §41101. The minutes of the council for the regular meeting of February 25, 1971, were received in evidence and are conclusive of the facts stated therein, unless the council may be shown to have acted corruptly or in bad faith, and to have clearly abused its powers: McCrea v. School District, 145 Pa. 550, 22 Atl. 1040 (1891); Whitehead v. School District, 145 Pa. 418, 22 Atl. 991 (1891); Geiser Mfg. Co. v. Frankford Twp., 40 Pa. Superior Ct. 97 (1909). Unless the contrary is shown, it must be assumed that the resolution under attack was regularly passed in entire good faith by the city council: Ayars v. Wyoming Valley Homeopathic Hosp., 274 Pa. 309, 118 Atl. 426 (1922). It is presumed that councils have complied with merely directory provisions of the law in matters over which they have legal jurisdiction: Erie v. Bier, 10 Pa. Superior Ct. 381 (1899). The official minutes of council are prima facie evidence of the validity of

the resolution, and, if anything essential to its validity has been omitted in passing it, the party resisting must show such omission: Borough of Ridley Park v. Citizens Electric Light & Power Co., 9 Pa. Superior Ct. 615 (1899). Hence, the fact that there was no evidence that the resolution was in writing as required by the optional Third Class City Charter Law is of no assistance to appellant in his attack upon the validity of the resolution. However, minutes of the meeting of February 25th show all five members of council were present but that only three were recorded as voting "yea" in favor of the resolution. The three recorded "yea" votes were a majority of the members of council and by themselves constituted a sufficient vote to adopt the resolution. Where the minutes of the meeting show sufficient affirmative votes were cast for adoption, such a technical defect in required recording of yea and nay votes will not defeat the validity of the resolution. *Cf.* Corry v. Corry Chair Co., 18 Pa. Superior Ct. 271 (1901).

Appellant next contends that the resolution is otherwise invalid because council did not find him guilty of the charges made against him. The relevant Civil Service Act provision provides:

"On hearings before the city council, . . . they may be discharged by city council if found guilty of the charges made against them."

The act does not specifically require the finding of guilt be expressed in writing or be incorporated and made a part of the resolution dismissing a civil service employe. The appellee argues that a finding of guilt must be assumed, since the honesty of purpose and good faith in the performance of acts in their official capacity will be assumed by courts on the part of persons holding responsible public positions, until the contrary clearly appears: Commonwealth ex rel. Hines

v. Winfree, 408 Pa. 128, 182 A.2d 698 (1962). But manifestly this principle cannot aid appellee's case, for no amount of good faith and honesty of purpose on the part of the city officials can render effective action which is abortive for failure to comply with the mandatory requirements of the law governing such actions: Hill v. Alexander, supra. The identical issue was viewed by the court in a similar factual situation in the case of Petersen v. Civil Service Board, 67 Cal. App. 70, 227 Pac. 238 (1924), where it was held that it cannot be assumed in a proceeding to remove a policeman that the imposition of a fine was based on a finding he was guilty of the charge. The Petersen court further concluded that in the absence of a finding of guilt, the Civil Service Board lacked jurisdiction to dismiss the officer. The identical issue was squarely faced by the court in State v. Board of Police Commissioners, 109 La. 368, 33 S. 372 (1902), where it was decided that a vote for dismissal of a police officer does not carry with it by necessary implication a finding that the charge has been sustained.

The question of whether the civil service provisions of the Third Class City Code require the records of the action of council to show a finding of guilt before employes under the Civil Service Act can be legally dismissed is one of first impression in this jurisdiction. The fundamental purposes of civil service acts are to establish a system where an employe in public service will be selected on the basis of their qualifications and fitness and whereby competent and faithful service will be rewarded by making the employes' tenure of office secure while they behave themselves well. It is intended that efficiency would be promoted by an assurance of continued employment, thereby serving the interests of employer and employe: Geis's Appeal, 341 Pa. 413, 19 A.2d 368 (1941). The evident purpose of

the removal provision is to prevent the removal of city employes from improper motives: Shellenberger v. Warburton, et al., 279 Pa. 577, 124 Atl. 189 (1924). In order that the purposes of the acts may be realized, the statutory provisions regulating termination of employment call for strict compliance with the terms of the acts. The legislature having seen fit to prescribe the method of dismissal of policemen for cause, that plan must be strictly followed and the municipality is without right to substitute for prescribed procedure a different method of its own: Geis's Appeal, supra; Hill v. Alexander, supra. It is apparent that the laudatory benefits of the act are not assured by the statutory appeal procedure, for at the evidentiary hearing before council there is usually much conflicting evidence and although on appeal the evidence must be heard de novo, the court must sustain the action of city council unless the evidence be such that if the case were tried by a jury a nonsuit or judgment n.o.v. would have to be entered. The court cannot substitute its judgment for that of council: Ditko Appeal, 5 D. & C. 2d 569 (1955), adopted by the Supreme Court, 385 Pa. 435, 123 A.2d 718 (1956). Hence, only the council when deliberating the issue of guilt has the right to pass upon credibility of witnesses and the weight of the evidence.

The provision of the Civil Service Act that such an employe could be dismissed if found guilty of the charges made against him was placed in the statute, no doubt, to insure that no dismissal would be upheld by the courts on a ground not found against such employes by the city council. The complaint against appellant charging conduct unbecoming a police officer contains five separate and specific specifications of misconduct. Appellee had the burden of producing evidence proving the misconduct at the hearing upon the

charges before the city council: Geis's Appeal, supra. But nothing in the record clearly indicates that council concluded appellee had satisfied its burden and, therefore, whether council found appellant guilty of any specified act of misconduct is a matter of pure speculation. It is, therefore, possible that the majority vote favoring dismissal was bottomed upon findings of guilt with respect to different specifications of misconduct and that there was no finding of guilt by the majority of the members of council with respect to any one specified act of misconduct. In order to find an employe guilty, the action of council must make such a finding with respect to the same specified act or acts of misconduct: People v. Failla, 64 Cal. 2d 560, 51 Cal. Rep. 103, 414 P.2d 39 (1966).

We cannot determine whether the dismissal by city council is reasonably supported by the evidence until we know what its findings on the specific charges are. We might be of the view, were we the finders of fact, that based on the evidence the employe was guilty of the specific act or acts charged, yet we have no authority to make such a finding unless council's contrary finding is capricious and in disregard of the evidence. We cannot presume, even though there is substantial evidence reasonably supporting a specific charge, that just because the council sustained the dismissal it found that any particular charge or all of them were true: Petersen v. Civil Service Board, supra; State v. Board of Police Com'rs., supra.

The statute provides that all employes subject to civil service shall be subject to suspension by the director of the department for misconduct, or violation of any law of this Commonwealth, any ordinance of the city, or regulation of the department, pending action by the city council upon the charges made against any of such employes. A court cannot know whether

an employe has been discharged for such violations until the court knows what conduct he is guilty of as determined by the city council.

We do not mean to hold that the city council must necessarily make separate findings on each specification, although it is required that it make some type of finding that will inform the court on appeal what charges are found to be true. If, here, the council had made a general finding of guilty on all charges, this would suffice, or, if it had found all to be true except certain specified charges, it would suffice.

We recognize the fact that councils of cities of the third class are not courts and that usually they are not composed of lawyers; it has been held also that they should not be tied down too closely by legal formalities: Ditko Appeal, supra; McCrory v. Philadelphia, et al., 345 Pa. 154, 27 A.2d 55 (1942); Bradycamp v. Metzger, et al., 310 Pa. 320, 165 Atl. 387 (1933). But there are certain matters which they have to deal with which should not be left to speculation but placed beyond the possibility of a doubt. We recognize also that such a proceeding before the city council is not a trial of an employe upon a criminal charge, but the charge is one which involves the highest degree of his character and reputation.

In some States, and for some offenses, the jury not only determines the guilt or innocence of the accused, but assesses the punishment; and in such cases it has been held that the jury must find defendant guilty and then add the punishment; that the latter without the former would be inadequate. These decisions must obviously rest upon the principle that the court is not authorized or justified to reason to an inferred verdict of guilty against the accused.

We think that there should, in the present instance, have been a finding by the city council that appellant

was guilty of at least one of the charges brought against him to have authorized the dismissal, and that, the action of council dismissing appellant not having been preceded or accompanied by such a finding, it was illegal. Hence, the legal status of appellant was not changed and he remains legally suspended pending proper action by city council.

Our research disclosed no cases specifically holding that an employe entitled to the protection of a Civil Service Act could be discharged without a finding of guilt. The conclusion that we have reached is in accord with the law as interpreted by the appellate courts of our sister States: 4 McQuillin on Municipal Corporations 389, sec. 12.262, and cases there cited.

Because there is no way of knowing what motivated the council to uphold dismissal, a somewhat anomalous action since appellant was previously only suspended by the mayor, the court will not be able to determine on the present state of the record whether the evidence to be produced at the hearing de novo is sufficient to support the action of council.

Hence, appellant was prejudiced, because council did not satisfy the procedural safeguard of the Civil Service Act requiring a determination of guilt. The present state of the record makes an intelligent court review impossible and fails to apprise appellant of the basis for the dismissal. The case of Vandergrift Borough v. Polito, 397 Pa. 538, 156 A.2d 99 (1959), involved a similar proceeding dismissing a municipal employe. On appeal, the court found the discharged employe was prejudiced because procedural safeguards were not followed during the course of the evidentiary hearing and thereupon remanded the case to council for a new hearing in accord with the law. Since the prejudice to appellant occurred only because council in its deliberations did not follow the procedural safeguard requiring

the determination of guilt, we do not deem it necessary to remand the case. The court on an appeal may consider resolutions or ordinances of council adopted or enacted after the appeal is perfected: E. E. Hollenback, Inc. v. Hadley, supra. Therefore, council may take appropriate action in accord with this opinion in the interval that must necessarily elapse before the hearing on the second phase of the appeal. Since appellant remains suspended with pay and a hearing on the second phase of his appeal will not be delayed, he cannot complain of prejudice if the record concerning his guilt or innocence is completed in this manner. Procedural safeguards are designed to assure fundamental fairness between the parties. They should not be used as technical tools for unjust exoneration of the guilty or for an aid to an improper conviction of an accused.

We do not here consider or decide the merits of appellant's remaining contention that he was improperly suspended on December 22, 1970, for 10 full working days instead of 10 calendar days. The validity of this suspension is not part of the case or controversy presently before the court. An action of assumpsit is a proper procedure to recover the pay to which an employe in a third class city is entitled during the period of his invalid suspension from which no statutory appeal could be taken: Loftus v. Carbondale, 405 Pa. 276, 175 A.2d 85 (1961).

In conclusion, we think it should be made clear that the procedures discussed in the opinion are applicable to all city employes who are entitled to the protection of the same statutory provision of the Civil Service Act. Such employes may be discharged only for the reasons stated in the Civil Service Act and their jobs are protected by the procedural safeguards discussed in this opinion. It is the plain intent of the Civil Service

Act that no employe subject to its provisions shall be discharged for arbitrary or capricious reasons or by reason of improper motives of the employer.

## ORDER OF COURT

And now July 30, 1971, it is ordered, adjudged and decreed, pursuant to the stipulation of counsel, that a hearing be held on the second phase of this proceedings on Wednesday, September 29, 1971, at 9:30 a.m. If, meanwhile, proper action of council shall find appellant not guilty of the specific charges made against him, his suspension as a patrolman of the New Castle Police Department shall automatically terminate by operation of law. If a proper action of council shall determine otherwise, then the action of council and objections thereto will be heard at the second phase of the appeal together with the other matters as set forth in the stipulation of counsel.